Tucker v. Bartle.

———————

TUCKER ET AL. V. BARTLE, *Plaintiff in Error*.

1. **Contract:** SPECIFIC PERFORMANCE OF: CONSIDERATION. Plaintiff was indebted to defendant in the sum of $1,900, and after agreeing upon the price of cattle sometime before that sold and delivered by plaintiff to defendant, and crediting it on the debt, defendant said if plaintiff would pay him what was due him, he, defendant, would make plaintiff a quit-claim deed for the land involved in suit. *Held*, there was no consideration for the promise to make the conveyance and a suit to enforce it could not be maintained.

2. **Statute of Frauds.** The statute of frauds does not make an agreement in writing obligatory because it is in writing. If not

Tucker v. Bartle.

binding as a verbal agreement before the statute because of want of consideration, reducing it to writing imparts to it no validity. The statute simply declares that no action shall be brought upon certain contracts unless reduced to writing.

*Error to Moniteau Circuit Court.*—HON. E. L. EDWARDS, Judge.

REVERSED.

*Smith & Harrison, G. J. Davis* and *A. W. Anthony* for plaintiffs in error.

(1) The court erred in permitting the plaintiffs to introduce any evidence in favor of the devisee, Tucker. The petition should have been first surrendered setting forth his interest. Story's Eq. Pl. (8 Ed.) secs. 379, 354; R. S., sec. 3667. (2) The alleged contract was *nudum pactum*, and therefore void, for the reason that the defendant promised to make a conveyance, in consideration that Jones would pay his own pre-existing debt. A promise by A to do what he is already bound to do to B, is not a sufficient consideration to support a promise by B to do something in return to A. In other words a promise cannot be conditioned on a promise to do a thing to which the party is already fully bound. *Price v. Cannon,* 3 Mo. Rep. 453; *Willis v. Gammill,* 67 Mo. 730; *Jackson v. Cabbin,* 8 M. & W. 790; *Bayley v. Homan,* 3 Bing. N. C. 915; *Dixon v. Adams,* Cro. Eliz. 538. (3) The cumulative promise of Jones to pay the debt which he already owed, a legal obligation to pay already existing, was a nullity. *McManus v. Bk.,* L. R., 5 Ex. 65; *Deacon v. Gridley,* 15 C. B. 295; *Malleau v. Hodgson,* 16 Q. B. 689; *Robb v. Mann,* 11 Pa. St. 300; *Gilmore v. Green,* 14 Bush. 772. (4) The alleged contract, even if in writing, would not be specifically enforced because the subject matter would be too indefinite. Pomeroy on Contracts, secs. 152, 153, 161; *Praler v. Miller,* 3 Hawkes 628; *Fowler v. Redican,* 52 Ill. 405; *Carr v. Duval,* 14

Peters 77. An executory contract for the purchase of land will not be specifically enforced where the contract· is denied in the answer and the evidence shows that it rested entirely in parol. *Wildbahn v. Robedaux*, 11 Mo. 659 ; *Hook v. Turner*, 22 Mo. 333 ; *Sutten v. Shipp*, 65 Mo. 297 ; Story's Eq. Jur., sec. 753. (5) In order to have the court to interpose to compel a conveyance there must be a definite specific agreement to sell and purchase proved. It must have been followed by acts of the parties, which in their nature, form a part performance of such an agreement, and a failure to perform works a fraud upon the party who seeks performance. 3 Washb. on R. P. (4 Ed.) top page 235 ; *Hagar v. Hagar*, 71 Mo. 610 ; *Johnson v. McGrunder*, 15 Mo. 365 ; *Despain v. Carter*, 21 Mo. 331 ; *Young v. Montgomery*, 28 Mo. 604. (6) Under the· pleadings and facts developed at the trial, it was an abuse of discretion in the circuit court to refuse the defendant leave to file an amended answer setting up the· statute of frauds.

*Draffen & Williams* for defendants in error.

(1) There was no error in the action of the trial court in the substitution of Thomas Tucker as a party plaintiff upon the record as the devisee and successor of Thomas S. Jones, whose death had been suggested. (2) The court did not err in refusing permission to defendant to file an amended answer. Amendments are not permitted where a party is guilty of *laches*. R. S., sec. 3586 ; *Weed, etc., v. Philbrick*, 70 Mo. 646 ; *Simmons v. Carrier*, 68 Mo. 416 ; *Stewart v. Glenn*, 58 Mo. 481. (3) The statute of frauds is not a bar to the relief sought. by plaintiffs. *Leibka v. Knapp*, 79 Mo. 22 ; *Edwards v. Smith*, 63 Mo. 119 ; 1 Greenleaf Ev., sec. 295 ; 3 Parsons· on Contracts (5 Ed.) 4 ; Agnew on Statute of Frauds, 245 ; Fry on Specific Performance, sec. 360 ; *Gale v. Nixon*, 6 Cowen 448 ; Waterman on Specific Performance, sec. 231 ; *Heidemann v. Woifstein*, 12 Mo. App.

366; *Bean v. Valle*, 2 Mo. 103; *Moore v. Mountcastle*, 61 Mo. 424; *Beckwith v. Talbot*, 95 U. S. 289; *Ivory v. Murphy*, 36 Mo. 534. (4) The consideration was amply sufficient to uphold the agreement. This was not a re-sale to Jones of property for which Bartle had paid a valuable consideration, and should not be so treated. Waterman on Specific Performance, 687; *Williams v. Jensea*, 75 Mo. 681. A compromise of doubtful rights will be upheld and carried into effect. *Stephens v. Spiers*, 25 Mo. 386; *Craus v. Hunter*, 28 N. Y. 389; *Pitkin v. Noyes*, 2 Am. Rep. 218.

HENRY, C. J.—The object of this suit is to enforce the specific performance of an alleged contract by which defendant agreed to convey to Thomas Jones and wife a tract of land in Morgan county, upon which Jones resided. In February, 1875, Jones and wife, reserving to themselves and the survivor a life estate in said land, conveyed it by deed to Bartle, "in consideration (as the deed expresses it) of valuable service rendered and to be rendered by him to them, and the sum of one dollar paid by him to them." The petition alleges that the defendant procured plaintiffs to make the deed; that it was made to secure moneys advanced and to be advanced to Jones by Bartle, and that afterwards, learning that Bartle claimed to own the land subject to the life estate of plaintiffs, Jones demanded that Bartle should execute a deed releasing any interest he might claim in said land; Jones insisting that he and his wife understood their deed as intended to secure Bartle in such advancements as he had made, and should thereafter make; that the parties met and it was agreed between them that Jones should deliver to Bartle a certain lot of cattle owned by Jones and pay him eight hundred and eighty-seven dollars in cash, the balance, which would remain unpaid, of an indebtedness of Jones to Bartle, and that thereupon the contract in relation to the land should be rescinded. That this agreement was made in October, 1879, and that

Jones then delivered the cattle to Bartle and afterwards tendered to him said balance of eight hundred and eighty-seven dollars, and demanded a deed from Bartle, which was refused. After the institution of this suit. Jones died, leaving a last will and testament, by which he devised to Thomas Tucker the land in controversy, and he was afterward substituted as plaintiff.

The defendant in his answer denied the agreement alleged, and also that the consideration for the deed made by Jones and wife was that named in the petition, and also that it was made to secure any indebtedness of Jones to Bartle then, or to be contracted. On a hearing, the court rendered a decree as prayed for, and defendant has appealed.

It appears from the evidence that Jones and his wife were old and childless, and that for a number of years prior to the execution of the deed by them to Bartle, he and they were on the most intimate terms, each having a high regard and warm affection for the other. That Bartle had, for many years, been in the habit of advancing large sums of money to Jones, to be used by the latter in his business of buying and selling cattle, and Bartle charged him no interest for its use. That Bartle lived in St. Louis and was engaged in the same business extensively, and handled the stock purchased by Jones in Morgan and adjoining counties, and sold it for him, or when a better market could be found elsewhere, shipped it to that market and gave Jones the benefit of reduced freight rates he had secured for himself on account of the large shipments he was in the habit of making, and for all this he made no charge against Jones. There is abundant evidence proving that Jones not only repeatedly told Bartle, but others, that in return for the many and valuable favors extended to him by Bartle, he intended that, at the death of himself and wife, Bartle should have all his property. There is no allegation in the petition that Bartle by unfair means procured the execution of the deed, and no proof of the allegation made

that he procured it at all; on the contrary all the evidence tends to show that it was voluntarily executed by Jones and wife in accomplishment of a purpose long entertained by them and frequently expressed, not only to Bartle, but to others.

After Jones executed the deed in St. Louis, he took it with him to his home in Morgan county, and kept it there until Bartle made him a visit, which was of frequent occurrence, when his wife signed the deed, and it was afterwards filed for record by Jones. This deed was twice read to Mrs. Jones before she signed it, and that she and Jones both well understood its nature and effect is manifest from the evidence. She testified that she knew that the life estate of herself and husband was reserved to them, and that they had the right to live on the farm and use it as long as they lived. In August, 1879, Jones wrote to Bartle, saying: " I would like to see you while we are alive in this world. You will find everything for you on the farm. Six or eight dollars will pay all I owe here."

It was stipulated in the deed that in the event of a sale of the premises by the parties before the death of the grantors, that they should receive all the interest accruing upon the proceeds during their joint lives, in place of the rents and profits of the land. In 1877 Bartle had met with considerable pecuniary losses in his business and wrote to Jones requesting him not to draw on him; but Jones did draw on him for $1,800, and Bartle wrote to him that he was not prepared to pay it, and requested Jones to take care of the draft. Shortly after this correspondence Jones and Bartle met and agreed that the land should be sold. Bartle found a purchaser at a price that was satisfactory, but when Jones learned, as he ought to have known, that Bartle and wife would have to join in a deed to the purchaser, he refused to sell. Here, for the first time, arose a misunderstanding between the parties. Bartle was informed that Jones and wife and some of their friends were impeaching his conduct to-

ward the old people, and accusing him of crookedness in the land transaction, and he went to Versailles, as he says, to vindicate his character. He and Mr. and Mrs. Jones, Judge Ross and other common friends, met in the back room of a bank at Versailles, when Bartle and Jones and wife talked of their affairs. But little, if anything, was said with regard to the consideration for, or motives which prompted Jones and wife to execute the deed. They wanted the land back, but the disagreement was about the cattle. No property passed and the cattle had been sold and delivered to Bartle some time before, and nothing remained but to agree upon the price, which was finally fixed at three and one-half cents per pound, and this credited upon an amount which Jones agreed that he owed Bartle, left Jones in Bartle's debt about eight hundred dollars. After some conversation between Bartle and Mrs. Jones, in which both became a little excited, he said: "Pay me what you owe me and I'll make you a quit-claim deed to the land." This is the contract of which the court was asked to decree a specific performance, and the above are substantially the facts proved.

Defendant did not plead the statute of frauds and plaintiffs' counsel, therefore, insist that that defence was thereby waived, but was there any contract proved enforceable in a court of equity, even if it had been in writing? Jones was indebted to Bartle in the sum of $1,900, and after agreeing upon the price of cattle some time before that sold and delivered by Jones to Bartle, and crediting it on the debt, Bartle said if they would pay him what they owed him he would make them a quit-claim deed to the land. There was no consideration for his promise. It was gratuitous. *Willis v. Grammill*, 67 Mo. 730; Chitty on Contracts (11 Ed.) 60. The statute of frauds does not make an agreement in writing obligatory because it is in writing. If not binding on a verbal agreement before the statute, because of a lack of consideration, reducing it to writing imparts to it no validity. The statute simply declares that no action shall be

brought upon certain contracts unless reduced to writing. We fail to find in the voluminous evidence in this case any agreement in writing, or any agreement which, if reduced to writing and signed by the party to be charged, would entitle plaintiffs to its specific performance.

It is contended that the dispute concerning the land culminated in the agreement on the part of Bartle to convey, as a compromise. If there was any controversy as to the land on the day the parties met at Versailles, this record does not disclose it. Mr. Jones, it is true, made a peremptory demand upon Bartle to convey it. Judge Ross in his testimony, states that, "at the conference at the bank no settlement was made. Bartle stated the amount of money Jones owed him, and Jones did not dispute it. The disagreement was about the cattle. No property passed That they finally agreed upon a price at which Bartle took the cattle, and Bartle promised to make a quit-claim deed to Jones and wife on payment of the balance due him." This was the ascertained balance after crediting Bartle's demand against Jones with the price of the cattle, and his promise to make a quit-claim deed to Jones and wife had no consideration to support it, except the payment of this balance due him. There was no controversy then or elsewhere as to the interest Bartle acquired in the land, or as to that reserved by Jones and wife. The only complaint Jones and wife ever made, except in the petition, was that Bartle wanted to receive the proceeds of the sale of the land. They always admitted his right as a remainderman, and no question as to the respective interests of the parties under the deed was discussed in their interview at Versailles.

It is alleged in the petition that the deed was made to secure advancements of money already made, and subsequently to be made, but there is no evidence to sustain the allegation, and it is not alleged that Bartle ever refused to make an advancement within his alleged obligation. It is nowhere claimed that his

refusal to honor Jones' $1,800 draft was a breach of any obligation he owed to Jones. If the deed was made to secure money already advanced, is it not strange that having gone to a conveyancer to make a deed conveying to Bartle a fee-simple title to the land, he should have changed his mind and reserved a life estate to himself and wife without consulting Bartle, and is it not equally strange, if it was only security for money lent, that when informed of the nature of the deed executed, Bartle acquiesced without a word? The trouble between these old friends commenced a little before their meeting at Versailles. Tucker, the substituted plaintiff, it seems, was an old acquaintance of the Joneses, and soon after the meeting of Bartle and Jones at Versailles, he appears upon the stage advancing money to enable Jones to pay Bartle and get a deed, and then at the old man's death a will is produced by which the old man left Tucker the property he had acquired through the aid which Bartle had given him.

Judge Ross says in his testimony, that after the failure of the negotiations for the sale of the land, he talked with Jones and wife about the cause of dissatisfaction, and that he "came to the conclusion that some one was meddling in it that did not know what was best for the old folks." I think that any one carefully reading the testimony will come to the same conclusion. Tucker is the party who is to receive the chief, in fact, nearly all the benefit from a decree enforcing a specific performance of this alleged agreement. Mrs. Jones gets just what was reserved for her in the deed to Bartle, and should the decree stand, Bartle gets the balance due him from Jones, and nothing whatever for the valuable services he had rendered to Jones, which enabled the latter to accumulate the property in dispute, and for which Jones promised to remunerate him by leaving him his property at the death of himself and his wife.

The judgment is reversed and cause dismissed. All concur.