MOLLIE LAPPIN et al., Appellants, v. A. B. CRAWFORD and G. A. WATSON.

Division Two, February 21, 1905.

1. SETTING ASIDE CONTRACT: Imposition: Fraudulent Advantage. Where the executing of a contract has been procured by taking a fraudulent advantage of the maker's distressful situation, a court of equity will afford relief by setting aside the contract.

2. CAUSE OF ACTION: Cancelling Notes and Deed of Trust: Fraudulent Advantage: Lack of Consideration: Demurrer. The petition charged that there was a deed of trust on plaintiff's home place to secure a debt past due, that the same had been foreclosed, and the holder of the mortgage debt had become the purchaser, and had agreed with the mortgagors that if they

would pay him $6,000 on or before a certain date he would permit them to redeem and would cause the trustee to make his deed to them directly; that, for the purpose of fulfilling that agreement, they applied to defendant, a loan agent, for a loan of $6,000, and paid him a commission of five per cent, or $300, to secure the same, which was to be a full compensation for his services; that he procrastinated in the matter until the time in which under their agreement they could redeem was about to expire, and that it was then too late in the day to borrow the money from any one else; that, after they had executed the note and deed of trust securing the $6,000 loan, the agent, taking advantage of their distressful situation, required them to execute two notes for $500 each, payable to himself, and to secure the same by a second deed of trust on the land, and threatened to stop the loan of $6,000 if they did not do so, and realizing that unless they complied with such request they would lose their farm, they executed the same; that the notes and deed of trust were without consideration. *Held,* that, the petition stated a cause of action for cancelling the notes for $500 each, and for setting aside the deed of trust, and the demurrer, which admitted the facts charged, should have been overruled. In such case, the makers of the notes were not free agents. And upon the principle that the notes were without consideration, and upon the broad principle of equity, they should be cancelled.

Transferred from St. Louis Court of Appeals.

REVERSED AND REMANDED.

*C. J. Wright* and *C. W. Hamlin* for appellants.

Plaintiffs' petition states a good cause of action. Fout v. Giraldin, 64 Mo. App. 165; Raddick v. Hutchinson, 95 U. S. 210; Bell v. Campbell, 123 Mo. 1; Turley v. Edwards, 18 Mo. App. 676; Sharan v. Gager, 46 Conn. 189; Foley v. Green, 14 R. I. 618; Gordon v. Elliott, 15 Cent. L. J. 232; Eadie v. Slimmon, 26 N. Y. 9; Berlien v. Bieler, 96 Mo. 491.

*Benj. U. Massey* for respondents.

The agreement, all of it, in relation to all matters

pertaining to the loan procured by Crawford for the parties, as set out in plaintiffs' petition, was a contract in which the parties thereto dealt on equal footing with each other. There was no duress exercised or threats made. Crawford refused to make the loan unless he was paid what he demanded. Plaintiffs considered, and concluded they would rather pay the charges demanded by Crawford than suffer foreclosure of the mortgage of O'Day. It does not appear that Crawford had any control over or concern with the O'Day mortgage. It only appears that the Lappins wanted money very badly with which to pay the O'Day debt, and that Crawford got as much out of them as he could for furnishing it. Such conditions are incidents of everyday life, and courts can not undo trades made under such circumstances, and make different arrangements between parties more comporting with generally accepted ideas of morality, equity and good conscience. Kitchin v. Greenbaum, 61 Mo. 110; Davis v. Luster, 64 Mo. 43; Fout v. Giraldin, 64 Mo. App. 170; Hackley v. Headley, 45 Mich. 570; Clark on Contracts, sec. 170; Secor v. Clerk, 22 N. E. 754; Doyle v. Church, 31 N. E. 221.

FOX, J.—This is an action to cancel certain notes and a deed of trust securing them. It originated in the Greene County Circuit Court.

On May 29, 1901, appellants filed the following amended petition in this cause:

"Plaintiffs, for their amended bill, complain of the defendants and say that they are husband and wife, and that for some time prior to the — day of March, 1900, plaintiff Mollie Lappin was the owner of the west half of the west half of section 15, and the east half of the east half of section 16, all in township 28, range 22, Greene county, Missouri, subject, however, to a certain deed of trust payable to one John O'Day. That on the — day of March, 1900, said deed of trust being past due, the said O'Day formally foreclosed the same

and became the purchaser thereat, but at the same time agreed with the plaintiff Mollie Lappin that if she would pay to him on or before a certain day, to-wit, March 17, 1900, the sum of six thousand dollars, he would permit her to redeem her property and permit the trustee's deed to said land above described to be made directly to her. Plaintiffs further say that she had invested a large sum of money in said farm, and that the same was their home, and being very desirous to redeem said property, and to take advantage of the proposition made to her by the said O'Day as aforesaid, and not having sufficient money with which to pay him, it was necessary that she should borrow money; and that the defendant, A. B. Crawford, was at that time engaged in the real estate and loan business in the city of Springfield, Missouri. That plaintiff applied to said Crawford for a loan of $6,000 on the land above mentioned, with which to redeem said land, and agreed with said Crawford that for his services in procuring for her said loan of six thousand dollars, which he agreed to do, she agreed to pay to him as a commission in full for his services in that behalf, five per cent of said amount, or three hundred dollars, which she did pay to him, and which the said Crawford agreed to accept as compensation in full for his services in that behalf.

"Plaintiffs further say that defendant Crawford neglected to procure for plaintiff Mollie Lappin said money aforesaid until on the seventeenth day of March, 1900, the same being the last day on which plaintiffs had the right to redeem their said property from the said O'Day under and by virtue of the contract which they had with him as aforesaid. That in the afternoon on said seventeenth day of March, 1900, said Crawford submitted to plaintiffs certain notes and deeds of trust on the land above described, to secure the loan which he had agreed to procure for her, but he, the said Craw-

ford, being fully informed of the conditions and circumstances surrounding plaintiffs in relation to their said property as aforesaid, wickedly and wrongly took advantage of plaintiffs' situation as aforesaid, and after they had signed the notes and deeds of trust to secure the loan aforesaid, the said Crawford without any previous notice to them whatsoever, and before turning over any money to these plaintiffs on said loan, presented to them two certain notes of five hundred dollars each, secured by a deed of trust on same land above described, payable to himself, and demanded of plaintiffs that they execute to him said notes and deed of trust for said sum of one thousand dollars. Plaintiffs protested that they did not owe him anything and that there was no consideration for such notes and deed of trust, and that they ought not to be compelled to sign said notes and deed of trust, but when they did so protest and refuse to execute said notes and deed of trust the defendant Crawford threatened and declared that unless they executed said notes and deed of trust at once, he would stop the loan to them of said six thousand dollars, and that they should have no money on said loan, and there not being time to procure the money elsewhere plaintiffs realized that unless the said Crawford permitted them to go on with said loan and turn over to them the money which he had borrowed for them, they would be unable to redeem their said property from the said O'Day, and that the same would be entirely lost to them.

"Plaintiffs further say that they believe the said Crawford was in a position to do what he threatened that he would do, and that they believe the said Crawford would have stopped said loan and thus prevented them from redeeming said farm unless they acceded to his unjust and illegal demand, to-wit, to signing said notes and deed of trust for the said one thousand dollars, payable to himself, and thus believing that they would be unable to redeem her said property above

mentioned, and that the same would be entirely lost to them if they did not sign said notes and deed of trust last aforesaid, they did so sign said notes and deed of trust aforesaid, and which deed of trust was recorded in book —, at page — in the recorder's office of Greene county, Missouri.

"Plaintiffs further say that notwithstanding plaintiffs owed the defendant Crawford nothing, notwithstanding they had paid the commission due him under their said contract with him, he, the said Crawford, wickedly and wrongly refused to let plaintiff have the money which he had promised, with which to pay said John O'Day, and thereby redeem her said farm unless plaintiff would accede to his demand and execute to him the two five hundred dollar notes and deed of trust above mentioned.

"Plaintiffs further say that no part of said one thousand dollars was owing by them to the said Crawford, but that it was too late in the day for them to secure the six thousand dollars from any other person or persons with which to redeem their said property, and that they were in fear and great distress of mind, and believed that unless they acceded to his demand to execute said notes and deed of trust last above mentioned the whole property upon which they had expended large sums of money, and on which they lived, would be entirely lost to them, and in order to save their said property aforesaid, and in order to redeem the same, and for no other purpose, they were compelled and did execute to the defendant Crawford said notes, and to the defendant G. A. Watson, as trustee, a deed of trust on the property first above described, and that such notes and deed of trust were executed on the seventeenth day of March, 1900, and that at the time of executing said papers aforesaid, plaintiffs did protest against the execution of the same.

"Plaintiffs further say that such demand on the part of said Crawford was illegal and unjust, and

wholly without consideration, and it was acceded to and executed by plaintiffs wholly through fear of losing their said property and their home.

"Wherefore plaintiff prays that this court make a decree cancelling said notes and deed of trust, all of which are still owned by the said A. B. Crawford, and that the lien of encumbrance created by said pretended deed of trust be cancelled, and that said notes and deed of trust be for naught held, and that plaintiffs have such other, further and proper relief as to the court may seem just, and for their cost."

To this petition, defendant filed a demurrer as follows: "Come now the defendants and demur to plaintiffs' amended petition, because said petition does not state facts sufficient to constitute a cause of action."

"Upon the hearing by the court of the demurrer, the court sustained the same, and rendered judgment for the defendants, and the plaintiffs declining to plead further, the court dismissed plaintiffs' bill and rendered judgment for the defendants."

In due time and form, plaintiffs prosecuted their appeal to the St. Louis Court of Appeals, and that court for the reason that title to real estate is involved in the suit, transferred the cause to this court, and it is now before this court for consideration.

### OPINION.

It is apparent from the record that there is but one question involved in this controversy; that is the correctness of the action of the trial court in sustaining the demurrer to the petition.

We have examined this petition, and carefully considered all the allegations contained in it, and have reached the conclusion that it states a cause of action. The demurrer admits the truth of every material averment in the petition, and we have no hesitation in saying, if the facts, as stated, are true, and the conditions were confronting the plaintiffs at the time of the exe-

cution of the note and deed of trust sought to be annulled, as is stated in the petition, equity should and will cheerfully afford the relief prayed for.

Where the execution of a contract has been procured under conditions which show its procurement by a fraudulent advantage or imposition incident to the transaction, courts of equity will afford relief and set aside the contract thus made. [Story's Equity Jurisprudence (13 Ed.), 239.]

We have in this case allegations, if true, which clearly place it within the rule as announced. It appears from the petition that the plaintiffs had sought the defendant for the purpose of securing a loan of $6,000, had fully paid him the amount agreed upon for his services, $300. This loan was to redeem property of the plaintiffs, and the day of redemption had been fixed and definitely settled. Defendant had not indicated to plaintiff in any way whatever any change of mind as to the amount of compensation for effecting the loan; but permitted them to act, as they had a right to do, upon the presumption that the contract for compensation had been completely made and the amount fully paid, until within a few hours of the expiration of the time for the redemption of the property, and after plaintiffs had executed the notes and deed of trust for the loan procured, defendant then presented two other notes and a deed of trust for $500 each, for compensation for services in securing the loan, and said to them that unless they executed said notes and deeds of trust at once, he would stop the loan to them of the six thousand dollars, and they should have no money on said loan. Plaintiffs protested with defendant that they were not owing him anything, that payment of his commission for services had been paid in accordance with the agreement, all to no avail. With the conditions confronting them, with no time to make other arrangements, that unless this loan was completed their property would be lost, they executed the notes and deeds

of trust involved in this suit. Had defendant notified the plaintiffs or indicated within a reasonable time before the expiration of the time for redeeming this property, that he would demand additional compensation for his services in arranging this loan to what had been agreed upon, it would present entirely a different proposition; but when it is alleged that the defendant was familiar and fully informed of the conditions and circumstances surrounding plaintiffs in relation to the redemption of said property, and that the notes and deed of trust were procured in the manner as stated in the petition, we can conceive of no state of facts, if true, which more clearly brings the case, as was said by this court in Bell v. Campbell, 123 Mo. l. c. 14 and 15, "within the operation of the principle that condemns and avoids a contract entered into where the obligor is not a free agent; where he stands *in vinculis;* where he is not equal to the task of protecting himself; where the circumstances which surround him at the time are of such extreme necessity or of distress that his will is overcome, his free agency destroyed by some oppression or fraudulent advantage or imposition incident to the transaction; in such case a court of equity will protect him, by setting aside the contract thus made."

Under the circumstances in this cause, as alleged in the petition, the plaintiffs were compelled to act hastily, having only a few hours in which to complete the redemption of their property. The defendant, who it is alleged, was fully informed as to the conditions confronting the plaintiffs in respect to the necessity of speedy action in order to regain their property, took advantage of the extreme necessities of the plaintiffs, and extorted from them the execution of a contract for the payment of money for services which the petition alleges were to be performed under a prior contract for the sum of three hundred dollars, which amount had been fully paid the defendant.

In other words, the petition avers, first, a contract

with defendant to secure a loan in which plaintiffs agreed to pay and did pay defendant for such services in securing such loan, the sum of three hundred dollars; secondly, it is substantially alleged that the defendant exacted of plaintiffs the execution of the notes and deed of trust sought to be cancelled, in the sum of $1,000, for the completion of said contract, already. entered into. Notes procured in this way are without consideration, and not susceptible of enforcement. In Lingenfelder v. Brewing Co., 103 Mo. 578, a similar proposition was involved; a contract for the payment of an additional amount, as is alleged in this case, was extorted and notes procured for its payment. This court, speaking through GANTT, J., in no ambiguous terms condemned the transaction, and after a thorough and exhaustive review of all the authorities, thus announced the conclusions of this court: ''What we hold is that, when a party merely does what he has already obligated himself to do, he cannot demand an additional compensation therefor, and, although by taking advantage of the necessities of his adversary, he obtains a promise for more, the law will regard it as *nudum pactum,* and will not lend its process to aid in the wrong.''

Upon the principle announced in the case last cited it must be held that the petition stated a cause of action upon the facts stated, if true, and for the purposes of disposing of the proposition now being considered, upon the demurrer, they must be treated as true; but aside from that principle, upon broad principles of equity the plaintiffs are entitled to the relief sought upon the grounds of fraudulent and unconscionable advantage. SHERWOOD, J., in Bell v. Campbell, supra, thus treats of the principle announced by Mr. STORY. He says:

''In instances like the present, where surprise and sudden action are the chief ingredients, where due deliberation is, therefore, wanting, these incidents are

classed by courts of equity under the head of fraud or imposition. Wherever undue advantage is taken of party 'under circumstances which mislead, confuse or disturb the just result of his judgment, and thus expose him to be the victim of the artful, the importunate, and the cunning,' where 'proper time is not allowed to the party and he acts improvidently, if he is importunately pressed, if those in whom he places confidence make use of strong persuasions, if he is not fully aware of the consequences, but is suddenly drawn in to act, if he is not permitted to consult disinterested friends or counsel before he is called upon to act in circumstances of sudden emergency or unexpected right or acquisition—in these and many like cases, if there has been great inequality in the bargain, courts of equity will assist the party upon the ground of fraud, imposition, or unconscionable advantage.' [Ib. sec. 251, and cases cited.]''

To the same effect is Turley v. Edwards, 18 Mo. App. 676, and Fout v. Giraldin, 64 Mo. App. 165. Judge STORY, in his closing expressions in section 239, supra, very aptly and clearly announced the equitable principle applicable to the state of facts alleged in the petition. He thus states the principle: ''Circumstances also of extreme necessity and distress of the party, although not accompanied by any direct restraint or duress, may in like manner so entirely overcome his free agency as to justify the court in setting aside a contract made by him on account of some oppression or fraudulent advantage or imposition attendant upon it.''

There is no necessity of pursuing this subject further. While this court, as has been uniformly held, maintains the right of parties to make just such contracts as they see proper, and it is not the province of this court to change or modify a contract legally made so as to comport with any accepted idea of morality, equity or justice, yet we hold it would be a humiliating

confession upon the equitable jurisprudence of this Commonwealth to so narrowly confine the administration of justice, upon equitable principles, as not to be able to meet "the demands of a constantly broadening and enlightening civilization."

The petition stated a good cause of action and it was error for the court to sustain the demurrer, and for that reason the judgment is reversed and the cause remanded.

All concur.