In re Estate of HENRY WOOD; GEORGE M. BLOCK, Executor, et. al., Appellants, v. MINNIE WOOD, No. 21,132.

In re Estate of HENRY WOOD; GEORGE M. BLOCK, Executor, et al., Appellants, v. MINNIE WOOD, No. 21,133.

In Banc, July 8, 1921.

1. CONTRACT: Interpretation: Extraneous Evidence. It is one of the elementary canons of construction that in the interpretation of an unambiguous written agreement, whose purpose is apparent, resort to extraneous evidence, documentary or otherwise, is unnecessary and unauthorized.

2. ————: Married Woman: Concerning Share in Husband's Estate. While the Married Woman's Act (Sec. 8304, R. S. 1909; Sec. 7323, R. S. 1919) authorizes a married woman to make any contract that a *femme sole* could make, and empowers her to make contracts with her husband, it is not clear that she can make a contract with reference to a subject that a *femme sole* could not make, such as a wife's distributive share in her husband's estate.

3. ————: ————: ————: Essentials. Assuming that a married woman may make a contract with her husband disposing of her prospective distributive share in his estate, such a contract, to be valid, must be supported by a consideration, the release must be unequivocal, and it must be fair, reasonable and just.

4. ————: Consideration: Lawful Allowance. A promise to do what the promisor is required by law to do constitutes no consideration

In re Estate of Henry Wood.

tion and maintenance, received from her husband no more than that to which she was entitled under the law, there was lacking from the contract an essential element, namely, a valid consideration.

5. ———: ———: **Separate Existence.** An agreement in the contract for separation that the wife will not at any time or in any way molest, disturb or trouble the husband, nor knowingly enter any residence or other house or place of business where he may be, nor write, telephone or otherwise communicate with him except through a named trustee, does not constitute a consideration for a release of her distributive share in his estate, nor lessen the obligation imposed upon him by the law to support and maintain her.

6. ———: ———: **Disposal of Individual Property.** An agreement in the contract of separation between a husband and wife that each is to have the right to dispose of his or her personal property free from any claim of the other added nothing to the validity of the contract, since said right has always existed in the husband and was conferred on the wife by the Married Woman's Act (Sec. 7323, R. S. 1919).

7. ———: ———: **Agreement of Trustee to Pay Wife's Debts.** An agreement in the wife's and husband's contract of separation by which the trustee named therein as a party covenanted and agreed to indemnify the husband and hold him harmless from all debts contracted or that might thereafter be contracted by her on her own account, constituted no consideration for the contract. Under the Married Woman's Act legal existence of the wife is not merged in that of the husband, and the intervention of a trustee in such a contract is unnecessary, and his obligation assuming the debts of the wife involved no correlative duty on the part of the husband to the trustee, and imported no consideration.

8. ———: **Unequivocal Release of Marital Rights.** Unless the agreement for separation and separate maintenance of the wife unequivocally declares or by fair implication can be construed to mean that she and her husband thereby intended to settle and adjust all their property rights and to foreclose her claim to any interest in his estate upon his decease, it will not be so construed. An agreement that they are to live separate and apart, that he is to provide for her support on condition that she remain away from him, and upon his request to join him in the conveyance and relinquishment of her dower in any real estate he might own or acquire during the separation, but with no word expressing or intimating that these obligations were intended to

affect her marital rights in his estate in the event of his death, was not an agreement · releasing her statutory claim to a distributive share in his personal estate.

Appeal from St. Louis City Circuit Court.—*Hon. Vital W. Garesche,* Judge.

AFFIRMED.

*Lewis & Rice, Holland, Rutledge & Lashly, Bryan, Williams & Cave,* and *Eliot, Chaplin, Blayney & Bedal* for appellants.

The trial court erred in holding that the separation agreement herein was not valid. (1)  Separation agreements between husband and wife are enforceable under the laws of Missouri, both at law and in equity, and may include a settlement of property rights.   Husband and Wife, 21 Cyc. 1592-96; Contracts, 9 Cyc. 519-520; Perry v. Perryman, 19 Mo. 469; Garbut v. Bowling, 81 Mo. 214; Specht v. Dausman, 7 Mo. App. 165; Schmieding v. Doellner, 10 Mo. App. 373; Roberts v. Hardy, 89 Mo. App. 86; Fisher v. Clopton, 110 Mo. App. 663; Stanton v. Johnston's Estate, 177 Mo. App. 57; Banner v. Banner, 184 Mo. App. 396; Speiser v. Speiser, 188 Mo. App. 328; Gilsey v. Gilsey, 195 Mo. App. 407; Rough v. Rough, 195 S. W. 501; O'Day v. Meadows, 194 Mo. 588; Crenshaw v. Crenshaw, 208 S. W. 249; 9 R. C. L. 524, 528, 529, 531. · (2)  The separation agreement, in giving each party the power to dispose of personal property free from any claim of the other, gave each the power to dispose by will free from any claim of the other.   The power to dispose of property free from claims of the other party to the settlement, includes the power to dispose by will.   Koerner v. Wilkinson, 96 Mo. App. 517; Benz v. Fabuvin, 35 Atl. 760; Missionary Society v. Wadhams, 10 Barb. 597; Forsythe v. Forsythe, 108 Pa. 129; Norcom v. D'Oench, 17 Mo. 98; Pendleton v. Bell, 32 Mo. 100; Wead v. Gray, 78 Mo. · 59; Campbell

v. Johnson, 65 Mo. 439; Underwood v. Cave, 176 Mo. 1; Papin v. Piednoir, 205 Mo. 521; Griffin v. Nicholas, 224 Mo. 275; Buffington v. Buffington, 51 N. E. 328. (3) The separation agreement herein was a complete bar to respondent's petition for distribution. A separation agreement in which there is a release of marital rights in property may be available in the probate court as a defense to claims for dower or statutory rights in place thereof. Fisher v. Clopton, 110 Mo. App. 663. (4) There was ample consideration for the separation agreement herein. Where the covenants are mutual and provide for a continued separation and involve payments of definite, fixed sums of money for support and maintenance, they are upon sufficient consideration. Egger v. Egger, 225 Mo. 144; 13 C. J. 311; Luttrell v. Boggs, 168 Ill. 361; Daniels v. Benedict, 97 Fed. 367; Fisher v. Clopton, 110 Mo. App. 663; Rough v. Rough, 195 S. W. 501; Baker v. Railroad, 91 Mo. 157; Hudson v. Browning, 264 Mo. 65; 13 C. J. 327; Kaiser's Estate, 199 Pa. 269; Estate of Edelman, 148 Cal. 233; Walker v. Walker, 9 Wall. 743; Com. v. Richards, 131 Pa. 209; 9 R. C. L. 524, 528, 529, 531. (5) There was no evidence that the separation agreement herein had been abandoned by the parties. A contract cannot be abandoned and abrogated by one party without the consent of the other. Merrill v. Central Trust Co., 46 Mo. App. 244; Koerper v. Royal Inv. Co., 102 Mo. App. 543; Wilt v. Hammon, 179 Mo. App. 414. (6) The respondent by agreeing that her husband could dispose of his personalty free from any claim by her gave him the unrestricted power to dispose of it by will. The potential interest of a wife in her husband's personalty is such that the law will protect her against fraudulent efforts of the husband to dispose of such property. Such a potential interest can be relinquished by the wife, so that rights thereunder cannot be asserted after the husband's death. Kerwin v. Smith, 204 S. W. 922; McLaughlin v. McLaughlin, 16 Mo. 242; Dyer v. Smith, 62 Mo. App. 606;

In re Estate of Henry Wood.

Davidson v. Davidson, 179 Mo. 687; Thomas v. Thomas, 107 Mo. 459; Hall v. Callahan, 66 Mo. 323. (7) The separation agreement was in the nature of a novation and a breach of its provisions would not restore the former rights, but would merely give a cause of action on the new contract. Lumber Co. v. Meffert, 59 Mo. App. 437; Bank v. Douglas, 178 Mo. App. 664-680; Bandman v. Finn, 103 N. Y. App. Div. 322, 92 N. Y. Supp. 1096; Gnechard v. Brande, 57 Wis. 534; Hard v. Burton, 62 Vt. 314. (8) The separation agreement herein is free from ambiguity. Therefore it was erroneous for the trial court to resort to extrinsic evidence in construing same. An unambiguous contract is not subject to construction by extraneous testimony.

*Buder & Buder, E. E. Schowengerdt* and *A. M. Wenger* for respondent.

(1) The separation agreement between Henry Wood and Minnie Wood lacked consideration upon which a relinquishment of dower could be based. The agreement specifically states that the two hundred dollars agreed to be paid monthly was for her support and maintenance. Under the law Henry Wood had to provide for her, irrespective of any agreement. He was merely agreeing to discharge an obligation which the law imposed upon him, to wit, to support his wife. Eggers v. Eggers, 225 Mo. 142; Orchard v. Store Co., 264 Mo. 56; Moran v. Stewart, 173 Mo. 215; King v. King, 184 Mo. 99; Johnson v. Johnson, 23 Mo. 561; Chrisman v. Linderman, 202 Mo. 605; Martin v. Jones, 155 Mo. App. 498. (2) Even where the separation agreement specifically releases dower, the agreement will not be upheld and enforced against the widow unless there has been an adequate settlement bestowed upon the wife and is reasonable, fair and just. In the case at bar, there is no settlement whatever upon the wife. Bechtel v. Barton, 110 N. W. (Mich.) 937; Jones v. Lamont, 118 Cal. 499; In re Taylor, 15 Ind. Ter. 219; Speiser v. Speiser, 188

Mo. App. 338; Banner v. Banner, 184 Mo. App. 399; Eggers v. Eggers, 225 Mo. 116; McBreen v. McBreen, 154 Mo. 323; King v. King, 184 Mo. 99; Johnson v. Johnson, 23 Mo. 561; Ireland v. Ireland, 43 N. J. Eq. 311. (3) The burden is upon appellants, who rely upon the separation agreement, to show that the agreement is fair, reasonable and just and that any relinquishment of dower is based upon a sufficient and adequate consideration and that it was entered into with a full comprehension and understanding and in good faith and without fraud. Eggers v. Eggers, 225 Mo. 145; Ireland v. Ireland, 43 N. J. Eq. 311; Cowee v. Cornell, 75 N. Y. 91. (4) The separation agreement does not show an intention or purpose to release and relinquish the rights of the wife in her husband's estate. In the absence of a clearly evidenced intention and purpose to release and relinquish her rights, the contract will be held not to be a release or relinquishment. To have that effect, the instrument must expressly so state. Fisher v. Clopton, 110 Mo. App. 667; Garbut v. Bowling, 81 Mo. 214; Roberts v. Hardy, 89 Mo. App. 92; Newton v. Truesdale, 69 N. H. 634, 45 Atl. 646; Perry v. Perryman, 19 Mo. 474; R. S. 1909, sec. 362; Dudley v. Davenport, 85 Mo. 462; King v. King, 184 Mo. 99; Jones v. Lamont, 118 Cal. 499; McVay's Estate, 260 Pa. St. 83; Lazear v. Porter, Assignee, 87 Pa. 513; Shelton v. Shelton, 20 S. C. 560; Ireland v. Ireland, 43 N. J. Eq. 311. (5) Dower is favored in law and no construction of an ambiguous contract should be adopted that would deprive the widow of her dower rights. If there is any doubt as to the effect of the instrument, it should be solved in favor of upholding dower. Klocke v. Klocke, 208 S. W. 825; Perry v. Perryman, 19 Mo. 474; Dudley v. Davenport, 85 Mo. 462; King v. King, 184 Mo. 105; Keeney v. McVay, 206 Mo. 42; Finnell's Estate v. Howard, 191 Mo. App. 218; Chrisman v. Linderman, 202 Mo. 614; Jones v. Lamont, 118 Cal. 499; Rice v. Waddell, 168 Mo. 113; Watkins v. Watkins, 7 Yerg. (Tenn.) 283.

WALKER, J.—The review here sought involves appeals in two cases, numbered, respectively, 21,132 and 21,133.

No. 21,132 is an appeal from the judgment of the Circuit Court of the City of St. Louis ordering the payment to Minnie Wood, the widow of Henry Wood, deceased, of $250,000, by his executor, of the funds in his hands belonging to said estate, or, at his option and in lieu thereof, that he turn over and deliver to her a one-fourth interest in certain securities, as partial distribution to her, as such widow, of the estate in his hands as executor.

No. 21,133 is an appeal from a similar judgment of said circuit court, for the payment to her, in the further partial distribution of said estate, of an additional sum of $750,000, or at his option and in lieu thereof turn over and deliver to her a three-fourths interest in the same securities described in the first judgment.

These judgments were entered August 5th, 1918, on the petitions of the widow presented in each case to the probate court of said city, upon appeal from similar orders of distribution made by that court on said petitions. The short transcript filed in lieu of a full transcript in each of these cases shows that motions for a new trial and in arrest were filed; appeals were allowed to this court on behalf of the St. Louis Children's Hospital, Saint Luke's Hospital and Jewish Hospital, beneficiaries under said will, the St. Louis Union Trust Company, trustee under said will, and George M. Block, executor.

By stipulation these two appeals are to be heard as one case. Similar proceedings appear in each, and all questions of law and fact apply equally to both.

Henry Wood died March 19, 1917, in St. Louis, without children or other descendants, leaving an estate consisting wholly of personal property amounting to more than two and a half million dollars. He left a widow, Minnie Wood, who was the petitioner and is the respondent in these cases. He also left a will dated December — 1916, admitted to probate in the Probate Court of

the City of St. Louis, March 23d, 1917, George M. Block being named therein as the testamentary executor.

The only devise, bequest or reference whatever to Minnie Wood, the testator's wife, is the following:

"The trustee shall pay to my wife, Minnie, if she survives me, the sum of twenty-four hundred dollars ($2400) per year, for life, payable at least quarterly, and monthly if possible. This provision for my wife to be in lieu of any dower interest in my estate and in lieu of the allowance to which she may be entitled under the laws of the State of Missouri as now set forth in Sections 115 to 118, of the Revised Statutes of Missouri, for 1909, and also to be in lieu of any rights of dower or of inheritance, or any other marital rights which she may or shall have under the laws of the State of Missouri, or any other State."

The three appellant hospitals with the "Bethesda," another charitable institution of St. Louis, are residuary legatees, taking in equal shares, and the appellant trust company is their testamentary trustee.

The widow renounced the will, refused to accept the provisions therein made for her and in her behalf, and stated in her written renunciation that Henry Wood died without any child or other descendants in being capable of inheriting, and that she elected to take as dower in his estate and in lieu of dower under the provisions of Sections 345, 347 and 348 of the Revised Statutes of Missouri of 1909:

"First: All the real and personal estate which came to her husband in right of her marriage, and all the personal property of the husband which came to his possession with the written assent of the wife remaining undisposed of, absolutely, not subject to the payment of the husband's debts.

"Second: One-half of the real and personal estate belonging to the husband at the time of his death, absolutely, subject to the payment of the husband's debts, as provided by Section 351 of the Revised Statutes of

Missouri, and is by statute and the laws amendatory thereto of the State of Missouri made and provided.''

This renunciation and election was, on the same day, served upon the executor.

On October 15, 1917, she filed in the probate court her first petition for partial distribution, upon which the case numbered 21,132 is founded. On March 22, 1918, she filed her second motion for partial distribution, upon which the case numbered 21,133 is founded.

That these petitions were respectively sufficient in form to authorize the orders of distribution made thereon is not questioned. Identical answers were filed in each. The answer in the first, omitting signatures of counsel, is as follows:

''Comes now George M. Block, executor of the estate of Henry Wood, and come also the following legatees under the will of said Henry Wood, to-wit: Jewish Hospital, Saint Luke's Hospital and the St. Louis Children's Hospital, and comes also the St. Louis Union Trust Company, trustee under the will of said Henry Wood, and, for answer to the petition filed herein by Minnie Wood, wherein she prays that an order of partial distribution be made directing the executor to pay her the the sum of two hundred and fifty thousand dollars ($250, 000) on account, respectfully state:

''First: That they deny each and every allegation in claimant's petition contained.

''Second: That even if said claimant would otherwise be entitled to such distribution (which the parties hereto do not concede) yet that she is precluded and barred from any claim whatever in or against this estate, for the reason that she and said Henry Wood, on or about the 24th day of September, 1902, in the City of St. Louis, Missouri, entered into a contract and agreement wherein and whereby said Minnie Wood agreed to accept certain provisions therein made for her in full satisfaction of all claim to or against said Henry Wood and his estate, and did thereby release any and all marital

rights against said Henry Wood and his estate; that a copy of said contract or agreement is attached hereto and filed herewith, being marked 'Exhibit A.' ''

Exhibit ''A'' referred to in the answer, signed by each of the parties and the trustee for Mrs. Wood, is as follows:

. ''This indenture, made this twenty-fourth day of September, one thousand nine hundred and two, between Henry Wood, of St. Louis, Missouri, of the first part; Minnie Wood, his wife, of the second part, and William E. Berger, of St. Louis, Missouri, as trustee of the said Minnie Wood, of the third part.

''Whereas, divers disputes and unhappy differences have arisen between the said party of the first part and his said wife, for which reason they have separated and are living apart, and do hereby consent and agree to live separate and apart from each other during their natural life;

''Now, this indenture witnesseth: That the parties hereto, in consideration of the premises and in pursuance thereof, do hereby promise and agree to and with the said trustee, and also to and with each other, that each may live separate and apart from the other in such place or places as they may respectively select, without interference from the other, and the party of the second part agrees that she will not at any time, or in any way, molest, disturb, or trouble the said party of the first part, nor knowingly enter any residence or other house or places of business where the said party of the first part may be, nor write, telephone, or otherwise communicate with the said party of the first part, except through the said Berger, party of the third part. In case the said party of the second part violates this agreement, the provisions for her support herein contained shall be void.

''Each of the parties of the first and second part shall retain and dispose of all personal property in their respective possession free from any claim by the other.

"And the party of the first part shall and will well and truly pay, or cause to be paid, to the said party of the third part, for the support and maintenance of his said wife, the annual sum of twenty-four hundred dollars in equal monthly payments, but said party of the second part shall have no right to assign or anticipate any such payments; said party of the first part further agrees to convey to said party of the third part, and his successors in trust, a suitable house properly furnished, in the City of St. Louis, Missouri, or elsewhere, as the said party of the second part may elect, to be possessed and occupied by said party of the second part during her natural life, free from taxes and without paying any rent therefor, but all repairs and alterations shall be paid for by the said party of the second part.

"The said party of the second part agrees, on request, to execute, acknowledge and deliver any deed or mortgage of real estate, or release of dower therein, now held or hereinafter acquired by the said party of the first part and in which said party of the second part may have a legal estate, provided, however, that the provisions now contained in the will of said party of the first part, in favor of said party of the second part, shall not be substantially diminished or changed to her disadvantage; in default of which, the said party of the second part shall have a claim against the estate of the said party of the first part for the value of the rights and interests in the real estate so conveyed or released.

"And said trustee, in consideration of the sum of one dollar to him duly paid, does covenant and agree to and with the said party of the first part to indemnify and bear him harmless of and from all debts of his said wife, contracted, or that may hereafter be contracted, by her, or on her account; and if the said party of the first part shall be compelled to pay such debt or debts, the said trustee hereby agrees to repay the same on demand to the said party of the first part."

Trials were had on these applications in the probate court, resulting in judgments or orders of distri-

bution as prayed, to the widow. Appeals were taken by the parties who had filed the foregoing answers, to the circuit court, where, upon a trial *de novo,* both cases being tried as one, a similar result was reached, and like orders of distribution entered in both, from which these appeals were allowed, and in each case transcripts transmitted to this court.

Printed abstracts in lieu of the entire record have been filed in compliance with Section 2048, Revised Statutes 1909, and with our Rule 11, and the cases have been argued and submitted.

I. The matter at issue is the construction to be given the agreement of separation between Henry Wood and his wife. Concretely stated, does this agreement operate to bar her claim to dower and other

Contract.    statutory rights, as defined in Section 351, Revised Statutes 1909, (Sec. 321, R. S. 1919)? It is scarcely necessary, as it is one of the elementary canons of construction, to say that if the terms of this agreement are unambigous and as a consequence its purpose apparent, a resort to extraneous evidence, documentary or otherwise, in its interpretation, is unauthorized and unnecessary.

The contention of the appellants is, that by this agreement the widow bargained away her dower and other statutory rights and is estopped from contending to the contrary.

While our law (Sec. 8304, R. S. 1909; Sec. 7323, R. S. 1919) declares a woman to be a *femme sole* and empowers her to make contracts as such, which we have held may be made with her husband, as well as others, the guarded limitation upon this power expressed by VALLIANT, J., in Egger v. Egger, 225 Mo. l. c. 145, is worthy of serious consideration, to the effect that while this statute authorizes her to make any contract that a *femme sole* could make, it is not clear that it means she could make a contract with reference to a subject that a *femme sole* could not control, that is, a wife's prospective

In re Estate of Henry Wood.

distributive share in her husband's estate. That she might, in contemplation of marriage, make an antenuptial contract on that subject, there is no question, but she would then be acting as a *femme sole* and not as a married woman, who was acting as a *quasi-femme sole* under our Married Woman's Act.

Assuming, however, that a married woman may make a contract with her husband disposing of her prospective distributive share in his estate, certain essentials, accentuated by their marital relations, must be present to render such a transaction valid. There must be a consideration; the release must be unequivocal; and it must be fair, reasonable and just.

II.  Henry Wood and his wife had lived apart for some time before they entered into the agreement of separation. The execution of this instrument, as its terms will demonstrate, simply gave express declaration to the nature of their marital relation, but did not change its legal aspect. To free himself from the annoyance of her presence, he agreed to pay her $2400 per year for maintenance and to provide her a furnished house for her occupancy. For this defined, though limited dispensation of his bounty, she agreed in terms as minutely particular as if drawn by a skilled scrivener, to thereafter never communicate with him, either by mail or telephone, to abstain from entering any residence, house or place of business where he might be and to refrain at all times from personally molesting, disturbing or troubling him. The penalty imposed upon her for a violation of these defined disturbances of his quietude and equanimity, was to invalidate the agreement and to render his obligation of no effect.

*Consideration.*

A coloring of mutuality is sought to be given to these obligations in the proviso that each party shall retain and dispose of their personal possessions free from the claim of the other.

A husband's prime and paramount duty which begins with the marital relation and ends with its sever-

ance is to support and maintain his wife in such a manner as is consistent with his situation and condition in life. [21 Cyc. 1151, D, and notes.] This duty found early recognition in the common law and has not been lessened by legislation. Married women's acts, which have empowered the wife to contract and be contracted with, and to control and dispose of her property, and her investiture with the rights of a citizen have not rendered less obligatory a compliance with this duty of the husband. There exists on her part, it is true, the correlative duty of service, but this does not affect the husband's duty so far as the determination of the matter at issue is concerned. [Plummer v. Trost, 81 Mo. 425; Rutledge v. Rutledge, 119 S. W. (Mo. App.) 489.]

Henry Wood's promise, viewed in the light of its legal effect, did not lessen the obligation imposed upon him by law to support and maintain his wife. Her obligation stripped of unnecessary words is, that she will let him alone. No principle in the law of contracts is better established than that a promise to do what the promisor is required by law to do constitutes no consideration for the promise. If, therefore, Mrs. Wood, by her husband's promise, got no more than that to which she was entitled under the law, and presently, but not pertinent here, we will contend that she got less, there was lacking from the transaction that necessary essential to a valid contract, namely, a consideration. [Egger v. Egger, 225 Mo. 1. c. 143; Lingenfelder v. Wainwright Brew. Co., 103 Mo. 578; Lappin v. Crawford, 186 Mo. 471; Tucker v. Bartle, 85 Mo. 114; Long v. Towl, 42 Mo. 549; 9 Cyc. 347.]

We would not be understood as intimating by the foregoing that an agreement of separation between a husband and wife which imports a valid consideration and otherwise conforms to the requirements of the law of contracts will not be upheld. [Crenshaw v. Crenshaw, 208 S. W. (Mo.) 1. c. 251 and cases; Rough v.

Rough, 195 S. W. (Mo. App.) 501.] The old doctrine based upon the aphorism that marriages are uniformly beneficial and separations prejudicial, has been dissipated by the modern view of the marital relation and the changed legal status of the respective parties thereto. However, under the facts in the case at bar, the agreement disclosing no valid consideration so far as the husband is concerned, and containing no covenant on the wife's part, other than a promise of silence and absence, so far as concerns her relations with him, it should not be held to be valid. [Baum v. Baum, 109 Wis. 47, 83 Am. St. 854.]

The right declared in the agreement of the parties to dispose of their respective personal property free from any claim of the other, adds nothing to the validity of the transaction. This right has always existed in the husband and was conferred on the wife by the Married Women's Act (Sec. 7323, R. S. 1919). Adding nothing to, and taking nothing from the rights of these parties, the provision is, therefore, nugatory, so far as it may determine the character or affect the validity of the contract. The agreement of the wife to execute, acknowledge and deliver deeds or mortgages to real estate on the request of the husband and to release dower therein, cannot be construed as giving any legal effect to the instrument in so far as concerns the determination of any question as to its validity, arising in the case at bar.

Nor do we regard the agreement of the trustee named therein, covenanting and agreeing to and with the husband to indemnify and hold him harmless from all debts of the wife, contracted or that may thereafter be contracted by her, on her own account, as importing any consideration for the making of this contract. It is true that in many of the earlier cases a stipulation in an agreement of this character by the trustee to hold the husband harmless and indemnify him against debts contracted by the wife has been held to show a sufficient consideration from the wife to the husband. It will be found, how-

ever, upon an examination of these cases, where any reason is attempted to be given for the ruling, that they are rendered under statutes which, like the common law, merged the legal existence of the wife in that of the husband and, in the first instance, rendered the existence of a trustee in contracts of this character necessary, and thus required that the contract be made in fact with the trustee instead of with the wife. [Garbut v. Bowling, 81 Mo. 214; Goddard v. Beebe, 4 G. Greene (Iowa) 126; Randall v. Randall, 37 Mich. 563; Wellesley v. Wellesley, 10 Sim. 256; Frampton v. Frampton, 4 Beav. 287;. Wells v. Stout, 9 Cal. 496.] The more modern view in harmony with the authority of married women to make contracts is that the intervention of a trustee is unnecessary. [Carey v. Mackey, 82 Me. 516; Comm. v. Richards, 131 Pa. St. 209; Robertson v. Robertson, 25 Iowa, 350; Randall v. Randall, 37 Mich. 563; Stebbins v. Morris, 19 Mont. 115.]

The right of the wife to contract with her husband as freely as with others, is clearly recognized by our law. [Section 7323, supra; Rice-Stix & Co. v. Sally, 176 Mo. 107; O'Day v. Meadows, 194 Mo. 588; Bower v. Daniel, 198 Mo. 289; Regal Inv. Co. v. Gallagher, 188 S. W. l. c. 153 and cases; Smith v. Sickenger, 202 S. W. 262.] The intervention of a trustee, therefore, not being necessary, his obligation to assume the debts of the wife involving as it does, no correlative duty on the part of the husband, to the trustee, imports no consideration.

III.   Aside from the question of consideration, however, is the agreement unequivocal? By this we mean, does it declare or by fair implication can it be construed to mean that the parties intended to settle and adjust all of their property rights and thereby to foreclose the wife's claim to any interest in the husband's estate other than the parsimonious pittance provided for her maintenance?

*Unequivocal Release.*

An examination of the numerous cases determined by courts of last resort, in our own as well as in other

jurisdictions, discloses that post-nuptial settlements have been upheld so far as their terms clearly and unmistakably indicate the purpose of the parties to settle and adjust their respective property rights arising out of the marital relation, but not otherwise. Semble: In Garbut v. Bowling, 81 Mo. l. c. 218, the wife accepted the sum agreed to be paid to her by her husband for her maintenance ''in lieu of any dower right to which she would be entitled to in his property and estate.''

In Sackman v. Sackman, 143 Mo. 576, it was held that a deed to a wife by her husband included in an agreement of separation in which she relinquishes her right of dower and any and all other claims to his real estate will invest her with an equitable title in the land conveyed by him to her.

In McBreen v. McBreen, 154 Mo. 323, a contract was upheld in which a wife relinquished her dower in her husband's land, in consideration of his conveying a tract of land to her.

We need not burden this opinion with additional illustrations from Missouri cases, further than to say that in numerous rulings of our Courts of Appeals it had been held, in harmony with the foregoing Supreme Court cases, that post-nuptial settlements may be so drawn that the wife may be precluded from claiming an interest in her husband's property other than that transferred to her by the contract of settlement. In none of these cases, however, has this ruling been made where it did not definitely appear from the instrument itself that it was the intention of the parties and that the wife relinquished her marital rights to her husband's property. [Gilsey v. Gilsey, 193 S. W. 858; Banner v. Banner, 184 Mo. App. 396; Fisher v. Clopton, 110 Mo. App. 662; Roberts v. Hardy, 89 Mo. App. l. c. 91.]

A conveyance by a wife to her husband, in view of separation, relinquishing her right of dower in the real estate of the husband, and releasing him from all claims for her support and maintenance and importing a con-

sideration, will be upheld in the absence of fraud, deception or oppression. [Robertson v. Robertson, 25 Iowa, 350.]

In a contract of separation of husband and wife, stipulations by each to release the other of "all interest, right and title to any and all real estate" and based upon a valid consideration, will operate as a release by the husband of his right of dower. [Luttrell v. Boggs, 168 Ill. 361.]

A separation agreement between husband and wife made while they are living apart, whereby they make a fair division of their community property, is held to be valid. [Rains v. Wheeler, 76 Tex. 390.]

A provision in a separation agreement, excluding a widow from all dower and interest in her husband's estate, will have that effect. [Hitner's Appeal, 54 Pa. St. 110.]

The wife's release of her claim for dower is sufficient consideration for the separation agreement. [Bratton v. Massey, 15 S. C. 277.]

The intent to bar her dower right must be clear or it will not have that effect. [Shelton v. Shelton, 20 S. C. 560; Ireland v. Ireland, 43 N. J. Eq. 311.] Especially is this true where.the agreement was simply between a man and his wife; was not under seal or acknowledged as prescribed by statute. [Walsh v. Kelly, 34 Pa. St. 84.]

A wife is barred from claiming any share in her husband's estate where she has in a valid deed of separation released him from all duties, liabilities and obligations of the marriage and he has during his lifetime fully performed his undertaking in good faith. [Scott's Estate, 147 Pa. St. 102.] And likewise, will a contract of this character be upheld where each party has waived all rights in the other's property acquired or to be acquired. [Aspey v. Barry, 13 S. D. 220.]

Affecting, as these settlements necessarily do, rights created by law which have gradually been liberalized and

In re Estate of Henry Wood.

extended for the benefit of married women, it is not only the part of wisdom, but a proper exercise of judicial discretion that they should be given a strict, rather than a latitudinary construction, so far as they may tend to limit the rights of the wife.

But whether strictly or liberally construed, there is nothing in the agreement at bar which in express terms or by reasonable implication can be held to sustain the conclusion that it was intended for any other purpose than to afford written evidence of a determination of the parties to live apart; for the husband to provide for the wife's support and as a *quid pro quo* therefor, if such it can be termed, for her to remain away from him, and at his will to join him in the conveyance and relinquishment of her dower in any real estate he might own or acquire during the separation. Not a word is expressed or even intimated that these obligations were intended to affect her rights by reason of the marriage in the event of his death. A fair construction of contracts of this character demands more definite terms than are found in this agreement to divest the wife of her rights under the law. We, therefore, rule adversely to the contention of the appellants, as to the meaning of this agreement.

IV.   Is the agreement fair, reasonable and just?

It is held in some jurisdictions that contracts, as at bar, are presumptively valid without proof *aliunde* of their equity or justice. This is held in states where Unreasonable and Unfair Agreement. the wife has, by statute, been given complete legal independence or is no longer *sub potestate viri*. [Daniels v. Benedict, 38 C. C. A. l. c. 597; Kellogg v. Kellogg, 21 Colo. 181; Robertson v. Robertson, 25 Iowa, 350; Howell v. Howell, 42 Okla. 286; Frank's Est., 195 Pa. St. 26; Tuxford v. Tuxford, 6 Sask. L. R. 96.] The contrary has been held by one of our Courts of Appeals, Speiser v. Speiser, 188 Mo. App. 328, and in Nichols v. Nichols, 169 Mich. 540; McConnell v. McConnell, 98 Ark. 193; Becket v.

Becket, 175 Ill. App. 185; Hungerford v. Hungerford, 161 N. Y. 550. In view of the construction we have given to the agreement at bar, this question becomes academic.

Even if it may be conceded, as we have stated, that a consideration may be eked out of some provision of the agreement, its terms are such as to authorize a ruling that it was not contemplated or intended to, nor did the widow thereby divest herself of her marital rights under our statute, to her share in her husband's estate.

Other questions are presented by able and industrious counsel, a consideration of which is rendered unnecessary by our disposition of the case.

The judgment of the trial court is affirmed. All concur; *James T. Blair, C. J.,* in paragraph 3, and the result.