York, Appellant, vs. Hinkle and others, Respondents.

*November 20 — December 15, 1891.*

*Duress: Assignment of corporate stock: Threats of injury to property.*

In an action against a corporation and stockholders to set aside an assignment of certain stock and a conveyance of certain lands, on the ground of duress, the complaint alleged that when the corporation was formed it was agreed that the plaintiff should be its permanent manager; that he then subscribed for the stock in question, and had paid therefor partly in cash and partly in said land, which was conveyed to the corporation for less than its real value upon the agreement that the plaintiff was to retain his relations to the company and share in the profits; that the stock is worth 150 per cent. of its par value; that the defendants, who owned a majority of the stock, conspired to wrest from the plaintiff his stock at much less than its real value: that they wrongfully deprived him of his position as manager, and offered him for his stock about fifty per cent. of its par value, and threatened that unless he accepted such offer they would shut down the works and take legal steps to have all the company's property charged with and sold for a debt then owing to one of the defendants, and that they would prevent the plaintiff's selling his stock to anyone else by informing any purchaser that they intended to pursue such course; and that the plaintiff, owing to his belief in these statements and the disturbed condition of his mind on account thereof, unwillingly surrendered and assigned his stock for the amount offered. *Held,* on demurrer, that as there is no allegation of fraud or of a threat to do anything which the defendants had not the legal right to do, the complaint does not state a cause of action.

APPEAL from the Circuit Court for *Ashland* County. This action was commenced against the defendants, *A. Howard Hinkle, William H. Hinkle, Frank B. Foote, William H. Davis,* and the *Ashland Iron & Steel Company,* for the purpose of rescinding and vacating the assignment of certain stock and conveyance of certain land, and for an accounting, etc. The complaint alleges, in effect, that the business men and real estate owners of Ashland, in 1886,

donated a furnace site and lots of the value of over $15,000, as a bonus to the plaintiff for erecting a blast-furnace at Ashland; that the defendant *William H. Hinkle*, for a one-half interest in the real estate thus donated, agreed to aid in placing stock and organizing a company for the purpose of erecting such furnace; that the plaintiff agreed to transfer the site to such company, to wit, the *Ashland Iron & Steel Company*, for $10,000 in stock of said company; that said *A. H. Hinkle* subscribed 5,000 shares of said stock; said *William H. Hinkle*, 4,000 shares thereof; the plaintiff, 2,500 shares thereof; said *Foote*, a brother-in-law of said *Hinkle*, 1,000 shares thereof; that, after the furnace was erected, the plaintiff necessarily purchased two additional lots for the company, at a cost of $600; that the stock of said company was worth more than par value, and would pay fifteen per cent. dividends; that the relations of the parties were harmonious to the time of the grievances mentioned; that *A. H. Hinkle* loaned the company $200,000, with the understanding that the same might be kept by the company as long as needed, but no such agreement was actually executed, through the wilful neglect of the defendants; that the plaintiff paid $17,500 in cash on his said subscription to said stock; that, after the completion of the furnace, the defendants entered into a conspiracy to wrest from the plaintiff his stock at much less than its real value; that in December, 1888, *W. H. Hinkle*, knowing the plaintiff was temporarily in straitened circumstances, informed the plaintiff that *A. H. Hinkle* wanted the plaintiff's stock and a settlement of all matters between the plaintiff and the company; that he was authorized to offer the plaintiff fifty per cent. of the par value of the plaintiff's stock on condition that the plaintiff would assume and pay the $600 due for the two lots mentioned, and deduct $500 from his claim for services; that, upon the plaintiff's objecting to said proposition, the said *W. H. Hinkle* informed him that

the defendants proposed to have the stock and full management; that they would pay him, therefore, $15,000 in full for his stock and all claims, and no more; that unless he accepted such proposition they would take steps to force a compliance with their demands; that the company was owing *A. H. Hinkle* $200,000, borrowed as aforesaid, and, if necessary, they would shut down the mill and take legal steps to charge the company's property with the amount thereof and sell the same under the hammer; that it was $15,000 or nothing; that they were in dead earnest; that if he did not do this he would lose all; that such threats were repeated in various forms, so that the plaintiff believed them; that the plaintiff reminded the defendant *W. H. Hinkle* that he had had repeated applications for the purchase of his stock, and could dispose of the same at full par value at Ashland; that said *William H. Hinkle* replied that they had the power and would prevent it; that the stock would have to be transferred on the books of the company, and that they would advise any purchaser of their determination to shut down the mill and sell the same for the debts of the company, and that no one would take his stock under such circumstances; that they would prevent the consummation of the transfer of such stock, if attempted; that said *William H. Hinkle* gave the plaintiff until the following Saturday to determine what he would do in the premises; that owing to his belief in these statements, and the disturbed condition of his mind on account thereof, the plaintiff unwillingly consented and assigned the stock, and consented to assume and pay the $600, and relinquish $500 on his services, and receive therefor the sum of $15,000; that the plaintiff had paid $27,500 for his stock, calling said site $10,000, and had received no interest or dividends; that the stock surrendered was worth $150 on its par value; that the company had used the two lots; that, preparatory to the conspiracy and since the plant was completed,

they compelled the plaintiff to give up his position as manager; that the plaintiff deeded the site at $10,000 solely upon the agreement that he was to retain his relations and share the profits; that the site was actually worth $150,000 at the time of such transfer; that, for the same reasons, he gave the defendants perpetually free use of the block 39, worth a rental of $500 per year; that he was to be the permanent manager, and that he had been removed therefrom without cause.

To that complaint the defendants demurred, on the ground that it did not state facts sufficient to constitute a cause of action. From the order sustaining said demurrer the plaintiff appeals.

*G. W. Hazelton,* for the appellant, contended, *inter alia,* that a trust relation subsisted between the parties, and that the acts of the defendants were in violation of the trust. *Ryle v. Ryle,* 41 N. J. Eq. 582; *Ervin v. Oregon R. & N. Co.* 27 Fed. Rep. 626; *Jackson v. Ludeling,* 21 Wall. 616; Pomeroy, Eq. Jur. secs. 668, 958, 1077; *Duncomb v. N. Y., H. & N. R. Co.* 84 N. Y. 190; *Ex parte Lacey,* 6 Ves. 625; *Cook v. Berlin W. M. Co.* 43 Wis. 433; Perry, Trusts, sec. 195; *Fisher v. Budlong,* 10 R. I. 525; *Dousman v. W. & L. S. M. & S. Co.* 40 Wis. 418. The circumstances under which the transfer of the stock and the surrender of appellant's interests were accomplished amount to duress. See *Foshay v. Ferguson,* 5 Hill, 154; *Maxwell v. Griswold,* 10 How. 242; *Cartwright v. Rowley,* 2 Esp. N. P. C. 723; *Swift Co. v. U. S.* 111 U. S. 22; *Railroad Co. v. Lockwood,* 17 Wall. 379; *Beckwith v. Frisbie,* 32 Vt. 559–566; *West Va. Trans. Co. v. Sweetzer,* 25 W. Va. 434; *Dousman v. W. & L. S. M. & S. Co.* 40 Wis. 418; *Van Buren v. Downing,* 41 id. 122; *Parcher v. Marathon Co.* 52 id. 388; *Heckman v. Swartz,* 64 id. 48; *Schultz v. Culbertson,* 46 id. 313; *Leighton v. Orr,* 44 Iowa, 683; *Dean v. Negley,* 41 Pa. St. 312; *Kissinger v. Kissinger,* 37 Ind. 341; *Ryan v. Ashton,*

42 Iowa, 365; *Adams v. Schiffer*, 11 Colo. 15; *Vyne v. Glenn*, 41 Mich. 112; *Parmentier v. Pater*, 13 Oreg. 121; *Sasportas v. Jennings*, 1 Bay (S. C.), 470; *Collins v. Westbury*, 2 id. 211; *Kuelkamp v. Hidding*, 31 Wis. 508. There is a class of cases kindred in principle to those above cited, where the transactions of parties are set aside on the ground that they are deemed essentially unjust and unfair. See *Headley v. Hackley*, 50 Mich. 43, and cases cited.

For the respondents there was a brief by *Tomkins, Merrill & Smith*, and oral argument by *W. M. Tomkins*. To the point that the principle that the directors of a corporation are trustees for the stockholders relates only to their acts in connection with the property held by the corporation itself, and has no application to a purchase of stock by a director from a stockholder, they cited *Board of Commissioners of Tippecanoe Co. v. Reynolds*, 44 Ind. 509; *S. C.* 5 Am. Corp. Cas. 340; *Carpenter v. Danforth*, 52 Barb. 581; *Gillett v. Bowen*, 23 Fed. Rep. 625; *Deaderick v. Wilson*, 8 Bax. 108; 1 Morawetz, Corp. 565, note; *French v. Fuller*, 23 Pick. 108.

CASSODAY, J. This action is to set aside the assignment of stock and the conveyance of land mentioned in the foregoing statement, on the ground that they were obtained by duress. The alleged duress is to the effect that *William H. Hinkle*, under the circumstances mentioned in the foregoing statement, informed the plaintiff that *A. Howard Hinkle* wanted his stock, and would give him for it fifty per cent. of its par value; that, if the plaintiff refused to accept, *A. Howard Hinkle* would take immediate legal steps to charge the company's property with $200,000 indebtedness then due to him for the borrowed money mentioned; and that the defendants would notify any person proposing to purchase the plaintiff's stock of these facts. It will be observed that no threat of doing any act is al-

leged, which the defendants, or one or more of them, did not have the power and legal right to do. There is no intimation in the complaint of any duress of the person. The most that is claimed is that there was duress of property or rights of property. But there can be no such duress without some illegal exaction, or some fraud or deception. The restraint must be imminent, and such as to destroy free agency in a mind of ordinary firmness, without the present means of protection. *Radich v. Hutchins*, 95 U. S. 210; *Wilcox v. Howland*, 23 Pick. 167; *Forbes v. Appleton*, 5 Cush. 115; *Benson v. Monroe*, 7 Cush. 125; *Natcher v. Natcher*, 47 Pa. St. 496; *Miller v. Miller*, 68 Pa. St. 493; *Heysham v. Dettre*, 89 Pa. St. 506; *Hackley v. Headley*, 45 Mich. 574; *Swanston v. Ijams*, 63 Ill. 165; *Harrison v. Milwaukee*, 49 Wis. 252. See cases carefully classified in 6 Am. & Eng. Ency. of Law, 57 *et seq.* Lord DENMAN, C. J., went so far as to say that "the fear that goods may be taken or injured does not deprive any one of his free agency who possesses that ordinary degree of firmness which the law requires all to exert." *Skeate v. Beale*, 11 Adol. & E. 990.

It does not appear from the complaint that the indebtedness of the company to *A. Howard Hinkle* for borrowed money was not due and enforceable at the time of the alleged duress, but, on the contrary, it is fairly inferable therefrom that it was then due and enforceable. It does not appear therefrom that the plaintiff's position, as vice-president and general manager of the company, was secured to him permanently or for any definite length of time, but, on the contrary, it is fairly inferable therefrom that, like all other officers and agents of the corporation, he was subject to displacement by a majority of the stockholders. In case the defendants had concluded to execute such threats, there would have been no obligation on their part to keep the same silent or refrain from informing per-

The Fish Creek B. & L. D. Co. vs. The First Nat. Bank of Ashland.

sons proposing to purchase the plaintiff's stock. No fraud or deceit is alleged. It is true the plaintiff had put his money and property into the corporation which was subject to the control of a majority of the stockholders; and they may have threatened to unwisely manage it; but such action on his part was voluntary, and with full knowledge that he was thereby subjecting his property to the management and control of such majority. Besides, such majority could do nothing to injure the intrinsic value of the plaintiff's stock which would not have a corresponding effect upon their own stock. The relation of the defendants to the plaintiff, in the transaction alleged, was not that of trustees to their *cestui que trust*, or that of fiduciary agents to their principal, and hence the authorities cited by the learned counsel for the plaintiff are, in our judgment, inapplicable. The demurrer was properly sustained.

*By the Court.*— The order of the circuit court is affirmed.