## MOLLIE LAPPIN et al. v. A. B. CRAWFORD et al., Appellants.

### Division Two, June 8, 1909.

1. **CANCELLING NOTES AND MORTGAGE: Extortion.** Where an agent for a money lender is fully apprised of the necessities of debtors and that speedy action must be taken by them in order to redeem their land, and knowing these facts takes advantage of them and, without consideration, extorts notes and a deed of trust from them for himself, the notes will be cancelled and the conveyance set aside.

2. ———: ———: **Knowledge.** And under such circumstances, the fact that the makers of the notes and deed of trust knew they were executing them when they signed and acknowledged them will not prevent their cancellation.

3. ———: ———: **This Case.** O'Day held a mortgage of $7,420 on plaintiffs' land, and had foreclosed the same and bought in the land. Prior thereto they applied to Crawford for a loan of $7,000 saying O'Day had agreed to throw off the $420 interest due. Crawford undertook to get the money from D., but D. refused to loan more than $6,000, and thereupon O'Day agreed to throw off $1,420 and to convey the land to plaintiffs if they would pay him $6,000 by March 17th, and Crawford neglected to close the deal until late in the afternoon of that day. They paid him his agreed commission of $300, and executed the deed of trust to D., and thereupon Crawford required of them to execute two notes to him of $500 each and secure them by a junior deed of trust, but they protested and refused, whereupon Crawford declared that unless they did so the loan of $6,000 would not go through and they could

not redeem their land, and under those conditions they signed the two $500 notes and signed and acknowledged the deed of trust to secure the same. *Held*, that the notes and deed of trust were not only without consideration, but their execution was extortion of the most flagrant character, and a court of equity should cancel them.

Appeal from Greene Circuit Court.—*Hon. G. W. Goad*, Special Judge.

AFFIRMED.

*Hamlin & Seawell* for appellants.

(1) When the question as to the sufficiency of the petition upon demurrer was determined by this court, the principles of law applicable to such transactions were clearly declared in the opinion, and our contention is that the evidence in this cause falls far short of bringing it within the principles so declared as to entitle plaintiffs to the relief demanded. (2) Plaintiffs must show that they exercised due diligence, for courts of equity will not grant relief from a transaction based on neglect. Brown v. Fagan, 71 Mo. 568; Mateer v. Railroad, 105 Mo. 352; Bryan v. Hitchcock, 43 Mo. 527. (3) The evidence in this case does not come up to the standard necessary to grant the relief demanded. Jackson v. Wood, 88 Mo. 78; Davis v. Fox, 59 Mo. 125; Bryan v. Hitchcock, supra. (4) Plaintiffs are not entitled to any relief on account of their delay and conduct after the transaction. Hart v. Hamblin, 43 Mo. 171; Este v. Reynolds, 75 Mo. 563; Taylor v. Short, 107 Mo. 384; Lewis v. Land Co., 124 Mo. 688; Williams v. Railroad, 153 Mo. 487.

*Hamlin & Hawkins* for respondents.

(1) This case was before this court on demurrer, and is reported in 186 Mo. 462. (2) The execution of the notes and deed of trust was procured under

conditions which show their procurement was by a fraudulent advantage or imposition and equity will afford relief. Story's Equity Jurisprudence (13 Ed.), 239. That the execution of these notes and deed of trust was fraudulently procured, there can scarcely be a doubt. (3) The contract made was undoubtedly a *nudum pactum* and can not be enforced. Lingenfelder v. Brewing Co., 103 Mo. 578. (4) Contracts made under extreme necessity and distress of the parties will not be enforced, but will be set aside by the courts. Turley v. Edwards, 18 Mo. App. 676; Font v. Giraldin, 64 Mo. App, 165.

GANTT, P. J.—This is the second appeal in this cause. The first appeal was from a judgment sustaining a demurrer to the bill, and that judgment was reversed by this court. [Lappin v. Crawford, 186 Mo. 462.]

After the cause was remanded the defendants filed their answer and the plaintiffs their reply, and the cause was tried and a decree rendered in favor of the plaintiffs, canceling the notes described in plaintiffs' petition and setting aside the deed of trust securing the same. Within due time the defendants took the proper steps to perfect an appeal to this court. The petition is set forth in full in the report of this case on the former appeal in 186 Mo. 462, and it is therefore unnecessary to reproduce it in full at this time. After the cause was reversed the defendants filed their joint answer, in which they stated that for a long time prior to March 3, 1900, plaintiffs were the owners of the real estate described in their petition, subject, however, to a certain deed of trust payable to one John O'Day, and that on the 3rd day of March, 1900, said O'Day foreclosed said deed of trust and at said sale John O'Day, junior, became the purchaser of said real estate for the sum of one thousand dollars; that sometime after the date of the foreclos-

ure plaintiffs came to the defendant Crawford and told him that the place had been sold and that they had lost it and requested the defendant to purchase said land from the said O'Day, or procure the title for them, and stated at the time that said farm was reasonably worth $12,000; that afterwards the said Crawford told them that he could procure a deed from the said O'Day for the sum of seven thousand dollars and could procure a loan on said farm for them of $5,760, and if they would negotiate said loan and give him, the said Crawford, their note for one thousand dollars, divided into two payments of five hundred dollars each, and would secure the same by a deed of trust on the land, he would procure the title to the said land for them.   That they agreed to do so and did on the 17th day of March, 1900, execute to one Sprague a note for $5,760, and secured the same by a deed of trust on said real estate, said note was to bear interest at the rate of five per cent; and that they also executed another note to Jerome Dickerson for $576 for the commission to the said Dickerson for making the Sprague loan and secured said note by a second deed of trust on said real estate, and executed two notes to this defendant Crawford for $500 each to mature six and seven years respectively, and secured said notes by the third deed of trust on said real estate; that the entire transaction was fully explained to the plaintiffs and that they agreed to the same and executed said notes and deed of trust to defendant, Crawford, with full knowledge of their contents. Defendants aver that plaintiffs have no interest in this action and are not the owners of the real estate or the real parties in interest.

In their reply the defendants denied that they agreed to execute to the defendant, Crawford, the two notes of $500 each, but say that the said notes were executed because said Crawford refused to permit said loan to be made until they were executed and

that no consideration passed from the defendants to the plaintiffs for the same. Wherefore plaintiffs pray judgment as stated in their petition.

At the conclusion of all of the evidence, at the request of both parties the court made a special finding of facts, which is in the following words:

"That on or about February 26th, 1896, plaintiff, George Lappin, purchased of J. R. Willyard the following described land situated in Greene county, Missouri, to-wit: The east half of the east half of section 16, and the west half of section 15, all in township 28, range 22, containing 320 acres, subject to a deed of trust executed by said Willyard in favor of John O'Day to secure notes payable to John O'Day, amounting to $7,000, which sum grantee and plaintiff, George Lappin, assumed and agreed to pay. Said deed to Lappin for consideration of about $9,000, and was recorded March 17, 1900.

"That on or about March 3, 1900, plaintiff, having defaulted in the payment of the notes and interest thereon, amounting at that time to about $7,420, secured by the deed of trust executed by said Willyard to John O'Day, the above described land was sold at trustee's sale and bid in by said John O'Day, or for him.

"That prior to said trustee's sale, and by virtue of the O'Day deed of trust, plaintiffs applied to defendant Crawford for a loan of $7,000, with which to pay off and satisfy said O'Day deed of trust, O'Day having at that time agreed with plaintiffs to throw off $420 of the debt.

"That in pursuance of said application, defendant Crawford had Jerome Dickerson examine said land above described with the view of procuring a loan of $7,000 from said Jerome Dickerson for plaintiffs. That said Dickerson, after examining said land, refused to make a loan of $7,000 and agreed to make a loan of $6,000 on said farm.

"That about, or a short time prior to the time of said trustee's sale foreclosure of the O'Day deed of trust (on March 3, 1900) plaintiffs, having been informed that Dickerson refused to make a $7,000 loan, but that he, Dickerson, would loan $6,000 on said land, went to Dickerson and informed him that O'Day would carry $1,000 if he, Dickerson, would loan the $6,000 on said land. That Dickerson, at that time, refused to make the $6,000 loan, if there was to be any other incumbrance on said land, but did agree to make the $6,000 loan if there were no other incumbrance, plaintiffs being advised of such agreement.

"I find that at some time near the date of said trustee's sale on March 3rd, 1900, said O'Day agreed with plaintiffs that he, O'Day, would throw off $1,420 of his debt against plaintiffs and agreed that they might redeem said land on the payment to him of the sum of $6,000 on or before March 17, 1900. I find that prior to March 17, 1900, defendant Crawford had knowledge of the fact that John O'Day had agreed with plaintiffs to throw off said $1,420, and permit plaintiffs to redeem said land on the payment to him, O'Day, of the sum of $6,000, on or before March 17, 1900.

"I find that prior to March 17, 1900, defendant Crawford agreed with plaintiffs to procure for them a loan of $6,000 for the sum of $300 commission, which said commission of $300 was thereafter paid to defendant in full.

"I find that it was agreed upon, or at least understood, by all parties interested in the procurement of said loan that said loan was to be made and the transaction consummated on March 17, 1900; that on said date plaintiffs came to the office of defendant Crawford, in Springfield, Greene county, Missouri, in the morning of said day; that defendant Crawford

informed plaintiffs that Dickerson would not be ready
to attend to the matter until the afternoon of that day,
and requested plaintiffs to come to his, Crawford's,
office at one o'clock, at which time plaintiffs returned
to defendant Crawford's office and remained in said
office until the defendant Crawford came, which was
about the hour of two p. m. of said March 17, 1900.
That about the time mentioned defendant presented
to plaintiffs the following instrument in writing—
which instrument I find had been drafted the day be-
fore—for execution by plaintiffs, to-wit: A deed of
trust on the land hereinbefore described from plain-
tiffs to G. A. Watson, trustee for R. W. Sprague, bene-
ficiary, to secure a note for $5,760, due five years after
date, and drawing five per cent interest from date.
Also a deed of trust on said land from plaintiffs to
G. A. Watson, trustee for Jerome Dickerson, bene-
ficiary, to secure a note for $576, due three years after
date, drawing seven per cent interest from date, and
subject to a deed of trust first mentioned to Sprague.
Also a deed of trust on said land from plaintiffs to
G. A. Watson, trustee for defendant A. B. Crawford,
beneficiary, to secure two notes of $500 each, payable
to defendant A. B. Crawford, one due six years after
date, and one seven years after date, with five per cent
interest from maturity, subject to the two former
deeds of trust to Sprague and to Dickerson, which
last mentioned deed of trust and notes are the subject-
matters of this suit.

"That at the time last mentioned plaintiffs signed
the first two notes and deeds of trust, to-wit, the note
and deed of trust to Sprague and the note and deed
of trust to Dickerson, but protested to defendant
Crawford against signing the two $500 notes to de-
fendant Crawford, and the deed of trust to secure
same, and at the time refused to sign said last men-
tioned notes and deed of trust, whereupon defendant
Crawford notified plaintiffs at the time that if plain-

tiffs refused to execute to him said last mentioned notes and deed of trust, said $6,000 loan would not be made.

"I find that plaintiffs had no knowledge that defendant Crawford would require them to execute to him said deed of trust and said two $500 notes, as a condition to securing by him said $6,000 loan or for redeeming said land from O'Day, prior to the time said deed of trust and said notes were presented by defendant Crawford to plaintiffs for their execution on said March 17, 1900.

"I further find that plaintiffs, at the last mentioned time, and after defendant Crawford told them that the loan would not be made if they refused to execute said deed of trust and notes to him, did sign said notes and deed of trust, and at once proceeded with defendant Crawford to the office of a notary public, before whom, in the presence of defendant Crawford, they acknowledged each of the three deeds of trust hereinbefore mentioned; that said deeds and notes were then taken by defendant Crawford to the office of defendant G. A. Watson, who was the attorney for said Dickerson; that said Dickerson, through his attorney, G. A. Watson, then paid to said O'Day a check for $6,000 and received from O'Day the trustee's deed made by virtue of the foreclosure of the O'Day deed of trust, said trustee's deed conveying said land to plaintiff Mollie Lappin. That soon after all three of said deeds of trust and said trustee's deed were filed in the office of the recorder of deeds in Greene county, Missouri.

"I further find that at the time plaintiffs executed the notes and deeds of trust in controversy to defendant Crawford, they believed that defendant Crawford would prevent the procuring of said $6,000 loan from Dickerson, and that plaintiffs further believed that unless said loan was procured on that day they would be unable to redeem said land from O'Day,

and that defendant was aware of this state of mind of plaintiffs.

"I find that at the time last mentioned, defendant Crawford owned no interest, either legal or equitable, in said land and that no consideration passed from defendant Crawford to plaintiffs for said notes and deed of trust executed by plaintiffs to him.

"That at the time this suit was had, and thereafter, plaintiffs had no interest in said land, the same having been conveyed by trustee's deed to E. C. Nichols, said conveyance being made by virtue of a foreclosure of a deed of trust executed July 14, 1900, by plaintiffs to secure to Nichols & Shepherd notes amounting to $2,175.

"That defendant Crawford is the owner and holder of said deed of trust and two $500 notes, the subject of this action."

The court thereupon rendered its judgment and decree cancelling said notes and setting aside said deed of trust as prayed in plaintiffs' petition.

I. The law in this case was settled in the opinion of this court on the former appeal in the 186 Mo. 462.

After a careful review of the testimony on both sides of this case, we think that the circuit court was fully justified in finding that John O'Day, who held a mortgage for $7,420 on the land owned by the plaintiff, had foreclosed the same and bought it in through his son John O'Day, junior. Prior to this foreclosure, the plaintiffs, the Lappins, had applied to the defendant, Crawford, to procure them a loan on the said lands for $7,000, stating to him that Mr. O'Day had agreed to throw off the $420 interest then due. Negotiations between the defendant Crawford and Jerome Dickerson were entered into, but Dickerson, after examining the farm, refused to lend more than $6,000. After the foreclosure the Lappins again

applied to Mr. O'Day to redeem the land and he agreed
with them that if they would pay him $6,000 by Satur-
day, March 17, 1900, he would convey the land to
them. This proposition of Mr. O'Day was made known
to the defendant, Crawford, and he undertook and
agreed for a commission of five per cent or $300, which
the evidence shows he received from the plaintiffs, to
get a loan for the Lappins of $6,000 by Saturday,
March 17, 1900. Crawford neglected to close up the
loan until late in the afternoon of the 17th of March,
and then after the Lappins had signed the notes pay-
able to Sprague and Dickerson and secured the same
by deed of trust on their land, the defendant Craw-
ford required the Lappins to sign the two notes and
deed of trust which are the subject of this suit, but
they protested and refused, whereupon defendant
Crawford declared that unless they did so the $6,000
loan would not go through and they could not redeem
their land, and it was under these conditions that
plaintiffs executed the notes and deed of trust on
their lands, which they seek to have cancelled by the
court.

In other words, the testimony now establishes
what the demurrer confessed on the former appeal,
to-wit, that the defendant was fully apprised of the
necessities of the plaintiffs and that speedy action
must be taken by them in order to redeem their lands,
and knowing this, took advantage of plaintiffs and
without consideration extorted the two notes and deed
of trust from them, in excess of the $300 commission
which they had agreed to pay and did pay him to
procure the loan of $6,000 from Sprague, through
Dickerson. Counsel for defendant argue at great
length upon the discrepancies in the testimony of the
plaintiffs but the fact remains undisputed in the record
that Mr. O'Day voluntarily gave Mrs. Lappin $1,420
of the debt due him, as the writing in evidence fully
attests, and that the Lappins then only had $6,000

to raise to redeem their lands. They were willing to execute the Sprague and Dickerson notes in order to procure the $6,000 and also to pay $300 to defendant for procuring that loan, and it needs little corroborative testimony to establish that the exaction of notes for another $1,000 and a deed of trust to secure the same, was extortion of the most flagrant character. But it is argued that the Lappins knew they were executing these notes and this deed of trust when they signed them and that a court of equity will not relieve them in such circumstances. This contention was answered when this cause was here on the former appeal, and it was said, in the language of this court in Bell v. Campbell, 123 Mo. l. c. 14 and 15, as follows: "The circumstances of this case clearly bring it within the operation of the principle that condemns and avoids a contract entered into where the obligor is not a free agent; where he stands *in vinculis;* where he is not equal to the task of protecting himself; where the circumstances which surround him at the time are of such extreme necessity or of distress that his will is overcome, his free agency destroyed by some oppression or fraudulent advantage or imposition incident to the transaction; in such case a court of equity will protect him, by setting aside the contract thus made." [1 Story, Eq. Juris. (13 Ed.), sec. 239.]

Moreover having agreed to procure the loan for five per cent, or $300, the exaction of the promise of the additional $1,000 was clearly without consideration and *nudum pactum* and the courts will not enforce such an unconscionable claim. As to the credibility of these parties, their evidence was heard by a judge who resided in the same county with all of them. He saw them and had opportunity to observe their manner of testifying and he believed the evidence of the plaintiffs and we think there is much internal evidence which corroborates them. The circuit court

having applied the principles announced by this court for his guidance and there being ample testimony to support his findings, the judgment and decree of the circuit court is affirmed.

*Burgess* and *Fox, JJ.,* concur.