## WARD v. SCARBOROUGH et al.*
### ·(No. 273-3503.)

(Commission of Appeals of Texas, Section A.
Jan. 11, 1922.)

**1. Trusts ⬦⟶371(1)—Petition to establish constructive trust held to allege sufficiently that mortgagor assented to extension of time of payment.**

A petition to establish a constructive trust on the ground that deed to defendant was obtained by duress by threat of foreclosure, alleging a default in the payment of interest on a deed of trust, authorizing the mortgagee to declare the whole indebtedness due, that the mortgagor began to arrange for a new loan, but that the mortgagee's agent proposed to and did waive the right to declare the indebtedness due and agreed to extend and did extend the time of payment of the overdue interest, and that the mortgagor thereupon abandoned her efforts to arrange to take up the loan, sufficiently alleged an assent by the mortgagor to the agent's agreement of waiver and extension.

**2. Interest ⬦⟶17, 37(1)—Installment of interest after maturity bears interest at legal rate.**

A past-due installment of interest on notes secured by a deed of trust bore interest from maturity at the legal rate under Rev. St. art. 4977, without any provision to that effect in the note.

**3. Bills and notes ⬦⟶139(2) — Interest held sufficient consideration for extension of time of payment.**

When a debt bears interest by contract or operation of law, an agreement by the parties for .an extension of the time of payment for a definite time binds the creditor to forbear suit during the time of the extension, and the debtor to forbear to discharge the debt and thereby stop the accrual of interest, and the accrual of interest is a sufficient consideration for the creditor's promise of forbearance, and hence an agreement to extend the time of payment of .an overdue installment of interest on notes secured by a deed of trust was supported by a valid consideration.

**4. Mortgages ⬦⟶408—Mortgagee held to have waived right to declare indebtedness due.**

Where interest was overdue on a deed of trust authorizing the mortgagee to declare the whole indebtedness due, and the mortgagor was attempting to arrange for a new loan, whereupon the mortgagee's agent agreed to waive the right to declare the indebtedness due and to extend the time of payment of such overdue interest, there was a valid waiver of any right to declare the indebtedness due for nonpayment of such interest.

**5. Contracts ⬦⟶95(1) — Duress may be of property.**

There may be duress of property as well as of person.

**6. Contracts ⬦⟶95(1)—What constitutes "duress" stated.**

To constitute duress it is sufficient that the will be constrained by the unlawful presenta-

tion of a choice between comparative values, as inconvenience and loss by the detention of property, loss of property altogether, or compliance with an unconscionable demand.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Duress.]

**7. Contracts ⬦⟶95(2)—Threat to do illegal act essential to duress of property.**

Duress of property cannot exist without there being a threat to do some act which the threatening party has no legal right to do and amounting to illegal exaction, fraud, or deception.

**8. Contracts ⬦⟶95(2)—Sufficiency of restraint to constitute duress.**

To constitute duress of property, the restraint must be imminent and such as to destroy free agency without present means of protection, but it is sufficient if it induces the particular person to perform some act which he is not legally bound to do contrary to his will, though such person be weak or timid.

**9. Contracts ⬦⟶95(1) — Duress may exist. though relief securable in the courts.**

Where the party asserting a wrongful or unlawful claim or making a wrongful or unlawful demand possesses or is supposed to possess the power to enforce his demand against the property of the party claiming duress without resort to the courts, duress may exist, although some measure of relief or redress might have been secured by an action in the courts.

**10. Conspiracy ⬦⟶13—Conspirator chargeable with acts of coconspirators.**

Where, as alleged, there was a conspiracy between defendant and two others to force plaintiffs to sell their property to defendant at a great sacrifice, the acts of all will be considered as done or procured to be done by defendant.

**11. Trusts ⬦⟶95—Conveyance under threat of foreclosure held obtained by duress, raising a constructive trust.**

Plaintiffs were the owners of valuable property subject to a mortgage, and defendant's father was agent of the mortgagee, and, by parol, had extended the time of payment of an overdue installment of interest and waived his right to declare the entire indebtedness due. Plaintiffs had negotiated a sale of the property, and defendant's brother was acting as their agent in connection with the sale, but, conspiring with defendant and their father, defeated the sale by false representations. The father thereupon demanded immediate payment of the debt in full and threatened to sell the land under a power of sale in the deed of trust, and plaintiffs were thereby induced to sell the land to defendant for less than its value, being unable to pay the debt or give bond to enjoin the sale. *Held,* that the sale was under duress and involuntary, and that plaintiffs are entitled to impress the property in defendant's hands with a constructive trust, they having offered to do equity with respect to all sums paid to them or paid by defendant in the discharge of the incumbrance.

---

⬦⟶For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes
*Rehearing denied March 1, 1922.

Error to Court of Civil Appeals of Eighth Supreme Judicial District.

Suit by Mrs. Willie Scarborough and others against E. J. Ward and others. A judgment for plaintiffs for insufficient relief was reformed and affirmed by the Court of Civil Appeals (220 S. W. 274), and defendant E. J. Ward brings error. Affirmed.

See, also (Civ. App.) 219 S. W. 505; (Civ. App.) 223 S. W. 1107; 236 S. W. 441.

Conner & McRae, of Eastland, for plaintiff in error.

J. R. Stubblefield, of Eastland, and F. G. Morris and Geo. E. Wallace, both of El Paso, for defendants in error.

GALLAGHER, J. Defendants in error, Mrs. Willie Scarborough, and her sons, Jesse, Chunk, and Moliere Scarborough, brought suit in the district court of Eastland county, Tex., against plaintiff in error, E. J. Ward, and against his father, John Ward, and his brother, Gus Ward, for the recovery of 2,840 acres of land situated in said county which they alleged they had conveyed to E. J. Ward under circumstances claimed by them to create a constructive trust therein in their favor, or, in the alternative, for the recovery of damages in the sum of $104,260.

The Wards excepted to the petition both generally and specially, and such exceptions were overruled. There was a trial before a jury, and at the close of the evidence the Scarboroughs dismissed their suit against John Ward and Gus Ward and elected to rely upon their claim that the land sued for was impressed with a constructive trust in their favor in the hands of E. J. Ward.

The case was submitted on special issues, and a verdict was returned in response thereto favorable in the main to the Scarboroughs, and a judgment was entered in accordance with such verdict. They were, however, dissatisfied with one feature of the judgment, and promptly excepted thereto when the judgment was rendered, and carried the case by appeal to the Court of Civil Appeals for the Second District at Fort Worth. The Supreme Court, under its statutory authority to equalize the dockets of the Courts of Civil Appeals, transferred the appeal to the Court of Civil Appeals for the Eighth District at El Paso.

E. J. Ward filed a brief in said cause presenting cross-assignments of error based on the action of the trial court in overruling his general and special exceptions. Upon hearing the Court of Civil Appeals overruled all of Ward's cross-assignments of error, reformed the judgment as prayed for by the Scarboroughs, and as so reformed affirmed it. (Civ. App.) 220 S. W. 274.

E. J. Ward applied for a writ of error, which was granted by the Supreme Court.

Plaintiff in error, in his application for the writ, complains of the action of the Court of Civil Appeals in overruling his first cross-assignment of error, which was based on the action of the trial court in overruling his general exception to the petition of defendants in error.

Defendants in error alleged in their petition that they were theretofore the owners of the land sued for, the same having been bought with funds belonging to the community estate of Mrs. Scarborough and her deceased husband, the father of the other defendants in error, but that she was authorized by the will of deceased to hold the same in her own name and to manage and dispose of the same during her lifetime. They further alleged that said land was incumbered by two deeds of trust to secure an indebtedness amounting to $9,000 which Mrs. Scarborough owed to one Mosely. They alleged that the said John Ward was trustee in both said deeds of trust and the agent of said Mosely in respect to said indebtedness. They alleged that the notes evidencing said indebtedness provided that the interest thereon should be paid annually, and that in default of the payment of interest the entire indebtedness might be declared due at the option of the holder, and that default in the payment of such interest had been made. They further alleged that, anticipating that said John Ward, as agent for Mosely, would declare said indebtedness due on account of such default, Mrs. Scarborough began to arrange for a new loan to take up such entire indebtedness, and so advised said Ward, and that he thereupon, finding it to the interest of Mosely to keep said loan rather than to collect and relend the money, in consideration of such fact, proposed to waive and did waive the right to declare all said indebtedness due, and agreed to extend and did extend the time of payment of said installment of interest for one year rather than to enforce the collection of said loan at that time, and that Mrs. Scarborough thereupon abandoned her efforts to arrange to take up said loan at that time.

They further alleged that afterwards Mrs. Scarborough entered into a contract to sell said land to one Vines for $6 per acre, reserving all mineral rights, and that said Gus Ward, acting as agent for her, agreed to put up and did put up in bank at Cisco a cashier's check for $1,500 in favor of said Vines as a forfeit to secure her compliance with her said contract of sale, and that a forfeit of $7,500 was put up to secure performance by Vines of his said contract of purchase.

They further alleged that plaintiff in error, E. J. Ward, conspired with the other two Wards to secure the land for himself at a much lower and grossly inadequate price, and that Gus Ward, notwithstanding his engagement to assist Mrs. Scarborough in consummating said sale, in pursuance of such conspiracy notified Vines or his agent that the forfeit put up for her had been withdrawn and represented that said land was in fact worth less than $3 per acre, and that such

representation was known by said Ward to be false at the time he made the same, and that all the same was for the fraudulent purpose of making Vines believe that she had abandoned said contract and for the purpose of inducing him to abandon it, and that the same did induce him to do so.

They further alleged that said Jesse Scarborough went to Greenville, Tex., to close the sale of said property to Vines, but was unable to do so on account of the interference of said Gus Ward as herein recited, and that in pursuance of such conspiracy, and to effect its purpose by oppressing and intimidating them and compelling them under duress to sell said land to E. J. Ward at an inadequate price, said John Ward and E. J. Ward met said Scarborough at the train as he was returning from Greenville after having failed to consummate said sale on account of the interference of said Gus Ward as aforesaid, and said John Ward demanded of him, and through him of the other defendants in error, the immediate payment of said entire indebtedness, and declared that, if the same was not paid the next day, he would advertise the land for sale to pay the same; that E. J. Ward then and there offered to buy said land at $4.50 per acre, allowing defendants in error to reserve only a half interest in any royalty that might be paid on an existing oil lease on said premises which lease expired in December, 1919, instead of allowing them to reserve all the mineral rights in said land, as they were entitled to do under the contract of sale to Vines.

They further alleged that, notwithstanding said principal indebtedness was not due, and notwithstanding said waiver of any right to declare it due, and the extension of the time of payment of said installment of interest as aforesaid, which extension had not expired, said John Ward asserted and claimed a right to declare said entire indebtedness immediately due and payable and to advertise said property for sale and sell the same under said deeds of trust and threatened to do so unless said entire indebtedness was paid at once.

They further alleged that they were ignorant of their right to insist upon and enforce their agreement with said Ward as agent of said Mosely to waive the right to declare the entire indebtedness due and to extend the time for payment of the unpaid installment of interest and believed that said John Ward could and would enforce the payment of said indebtedness by a sale of said property if they did not accept the offer of E. J. Ward to purchase the same then and there made, and, being unable to give bond to enjoin such sale, and not knowing where they could borrow the amount of money necessary to discharge said entire indebtedness which then aggregated over $10,000; while their financial position was discredited by such impending forced sale of such land to pay said debt, they, through such undue influence, fraud, oppression, and financial duress, were compelled to accept, and did accept, the offer of purchase so made by E. J. Ward, and conveyed the land to him on April 25, 1916.

They further alleged that said E. J. Ward, by false representations afterwards induced them to convey to him for an inadequate consideration the one-half interest in any royalty which might be paid under the oil lease then existing on said land, which interest in said royalty they had reserved at the time they conveyed said land.

They also alleged that, if they were mistaken as to the existence of a conspiracy between all the defendants, said E. J. Ward knew of the matters and things theretofore set out, and all the same, and knew that they were thereby unduly influenced, intimidated, and coerced in making the sale to him for a grossly inadequate consideration, and that he knowingly availed himself of the unlawful acts of the other Wards to secure an unconscionable bargain in the purchase of said land.

They further alleged that by reason of the premises said Ward should be decreed to hold said lands in trust for them, subject to their doing equity by submitting to a decree imposing upon them as a condition of recovery the return of all purchase money received by them and all money paid by said Ward in the discharge of incumbrances on said land.

They further alleged that the mineral rights in said land were worth $100,000, and that the land, without the mineral rights, was worth $4,260 more than they received for the same from said Ward.

They further alleged that they used due diligence to learn the facts, and that they did not discover that Gus Ward had misrepresented the value of the land to Vines until after January, 1918, though they made due inquiry to discover all that caused the trade with Vines to fail.

This suit was instituted December 19, 1918.

The major portion of said pleading is copied at length in the opinion rendered in this cause by the Court of Civil Appeals and reported in 220 S. W. 274.

Plaintiff in error, while contending that the facts as alleged are insufficient as a whole to state a cause of action for the establishment of a constructive trust, also insists that certain particular facts alleged are insufficient to show any wrongful action on the part of himself or his alleged coconspirators, and therefore should be disregarded and eliminated in determining the sufficiency of such pleadings.

[1] In this connection plaintiff in error contends that the allegations of such plead-

ing do not show a consideration for the alleged waiver by John Ward as agent of said Mosely of his right to declare the entire indebtedness due for nonpayment of said installment of interest, or for his agreement to extend the time of payment of such installment of interest for one year, as alleged, and bases such contention on the fact that the petition does not allege in express terms that Mrs. Scarborough assented to or joined in the agreement of waiver and extension alleged to have been made by John Ward as agent for Mosely. The petition does allege that Mrs. Scarborough, after such agreement, refrained from making any further effort to take up the loan. This was a sufficient allegation to show assent to such agreement by her.

.[2] While it is not alleged that by the terms of said notes said past-due installment of interest bore interest from its maturity in the absence of such provision in the note, it would, under the statute, bear interest from maturity at the legal rate. R. S. art. 4977; Angel v. Miller, 90 Tex. 505, 39 S. W. 916.

[3] When a debt bears interest either by convention or operation of law, the effect of an agreement by the parties thereto for an extension for a definite time is that the creditor is bound to forbear suit during the time of the extension, and that the debtor is bound to forbear to discharge his debt and thereby stop the accrual of interest before the time agreed upon. The accrual of interest in such cases is a sufficient consideration for the promise of forbearance in bringing suit. Benson v. Phipps, 87 Tex. 578, 580, 29 S. W. 1061, 47 Am. St. Rep. 128; Austin Real Estate & Abstract Co. v. Bahn, 87 Tex. 582, 584, 29 S. W. 646, 30 S. W. 430.

The petition alleged an agreement supported by a valid consideration for extension of time for the payment of said installment of interest.

[4] The allegations of said pleading show that this agreement was made in connection with a promise to forego the right to declare the entire indebtedness due and with knowledge that Mrs. Scarborough had been attempting to make arrangements to pay the entire debt, and that she relied on such promise and abandoned her effort to arrange a new loan to take up such indebtedness. We think the allegations are sufficient to show a valid waiver of any right to declare the indebtedness due for nonpayment of said installment of interest. Building & Loan Ass'n v. Stewart, 94 Tex. 441, 447, 61 S. W. 386, 86 Am. St. Rep. 864.

Plaintiff in error also contends that the allegations of such pleading are insufficient to show that the sale made to him by defendants in error was under legal duress and involuntary.

The tendency of the courts is to enlarge the application of the doctrine of duress and to make it, in an increasing variety of cases, the ground for affording relief against oppression and coercion unlawfully exercised to effect extortion or secure unconscionable advantage.

[5] That there may be duress of property as well as of person is now thoroughly established. McGowen v. Bush, 17 Tex. 196, 201; Oliphant v. Markham, 79 Tex. 543, 548, 15 S. W. 569, 23 Am. St. Rep. 363.

[6] To constitute duress it is sufficient if the will be constrained by the unlawful presentation of a choice between comparative evils as inconvenience and loss by the detention of property, loss of property altogether, or compliance with an unconscionable demand. 9 R. C. L. p. 723; Harris v. Cary, 112 Va. 362, 71 S. E. 551, Ann. Cas. 1913A, 1350.

[7, 8] Duress of property cannot exist without there being a threat to do some act which the threatening party has no legal right to do—some illegal exaction or some fraud or deception. The restraint must be imminent and such as to destroy free agency without present means of protection. 9 R. C. L. p. 723; York v. Hinkle, 80 Wis. 624, 50 N. W. 895, 27 Am. St. Rep. 73; Taylor v. Hall, 71 Tex. 213, 216, 9 S. W. 141.

The restraint, intimidation, or compulsion is sufficient if it induces the particular person claiming duress to perform some act which he is not legally bound to do, contrary to his will. There is no discrimination against the weak or timid. Landa v. Obert, 78 Tex. 33, 52, 14 S. W. 297; First National Bank v. Sargent, 65 Neb. 594, 91 N. W. 595, 59 L. R. A. 296, 301.

[9] The courts have drawn a distinction between the cases where, although the claim asserted or demand made is wrongful or unlawful, the party asserting the claim or making the demand is compelled to resort to the courts to enforce the same, and the cases where the party making such demand possesses, or is supposed to possess, the power to enforce such demand against the property of the party claiming duress without resort to the courts.

In the former class of cases it is held, we think, with practical uniformity, that there is no duress. Phœnix Land Co. v. Exall (Civ. App.) 159 S. W. 474, 485, pars. 9 and 10 (writ refused); Shuck v. Interstate Building & Loan Ass'n, 63 S. C. 134, 41 S. E. 28, 32, 33; Benson v. Monroe, 7 Cush. (Mass.) 125, 54 Am. Dec. 717; Forbes v. Appleton, 5 Cush. (Mass.) 115, 118.

The latter class includes cases where one party has possession of the property of another and refuses to surrender it except upon compliance with a wrongful demand and the delay of an action to recover it would

cause great or irreparable injury, cases where one party is invested with the power to sell or dispose of the property of another and threatens to exercise such power wrongfully or oppressively and in a way to sacrifice such property or inflict great or irreparable injury, and other cases in which one party may be in a position to inflict in various ways great or irreparable injury to the property or property interests of another if compliance with the unlawful demand is refused.

In this latter class of cases duress may exist, although some measure of relief or redress might have been secured by an action in the courts. Close v. Phipps, 7 Man. & G. 585; Lonergan v. Buford, 148 U. S. 581, 13 Sup. Ct. 684, 37 L. Ed. 569; Harris v. Cary, 112 Va. 362, 71 S. E. 551, Ann. Cas. 1913A, 1350; First Nat. Bank v. Sargent, 65 Neb. 594, 91 N. W. 595, 59 L. R. A. 296; Joannin v. Ogilvie, 49 Minn. 564, 52 N. W. 217, 16 L. R. A. 376, 32 Am. St. Rep. 581; Lappin v. Crawford, 221 Mo. 380, 120 S. W. 605; Kilpatrick v. Germania Life Ins. Co., 183 N. Y. 163, 75 N. E. 1124, 2 L. R. A. (N. S.) 574, 111 Am. St. Rep. 722; McMurtrie v. Keenan, 109 Mass. 185; Whitcomb v. Harris, 90 Me. 206, 38 Atl. 138; Klein v. Bayer, 81 Mich. 233, 45 N. W. 991; State v. Nelson, 41 Minn. 25, 42 N. W. 548, 4 L. R. A. 300; De Graff v. County of Ramsey, 46 Minn. 319, 48 N. W. 1135; Vyne v. Glenn, 41 Mich. 112, 1 N. W. 997; Preston v. City of Boston, 12 Pick. (Mass.) 7, 14; Pemberton v. Williams, 87 Ill. 15; Mearkle v. County of Hennepin, 44 Minn. 546, 47 N. W. 165; Nielson v. McDonald, 6 Johns, Ch. (N. Y.) 201, 210.

In the English case of Close v. Phipps, supra, mortgaged premises were advertised for sale on the 2d day of October under a power contained in the mortgage. On the 20th day of September preceding the date set for such sale the mortgagor offered to pay the debt in full. The mortgagee refused to stop the sale and deliver the deeds held by him unless certain pretended charges and a debt not secured by the mortgage were first paid. The sum demanded was paid under protest, and suit brought to recover it. The court held that the money was paid under circumstances amounting to duress.

The case of Lonergan v. Buford, supra, involved a sale of live stock. The sellers, having received a large part of the purchase price, refused to deliver any of the property unless the balance was paid in full, notwithstanding they had fallen materially short in the kind and quantity of stock contracted to be delivered. The amount demanded was paid under protest and suit brought to recover the same. We quote from the opinion of the court as follows:

"Finally, it is objected that the last payment was voluntary, and therefore cannot be recovered, either in whole or in part, although it was in terms made under protest. It appears from the testimony that the defendants refused to deliver any of the property without full payment. This was at the commencement of the winter. The plaintiffs had already paid $175,500, and without payment of the balance they could not get possession of the property, and it might be exposed to great loss unless properly cared for during the winter season. Under those circumstances, we think the payment was one under duress. It was apparently the only way in which possession could be obtained, except at the end of a lawsuit, and in the meantime the property was in danger of loss or destruction. The case comes within the range of the case of Radich v. Hutchins, 95 U. S. 210, 213 [24 L. Ed. 409, 410] in which the rule is thus stated: 'To constitute the coercion or duress which will be regarded as sufficient to make the payment involuntary, * * * there must be some actual or threatened exercise of power possessed, or believed to be possessed, by the party exacting or receiving the payment over the person or property of another, from which the latter has no other means of immediate relief than by making the payment.'"

In the case of Harris v. Cary, supra, Harris, a minority stockholder in a corporation, was induced to surrender without consideration a part of his stock to Cary, who controlled the corporation, upon a threat to wreck it, and destroy the value of such stock if his demand was refused. Harris, being in necessitous circumstances and unable to protect himself and save the value of his stock in any other way, complied with the demand. He afterwards sued to set aside the transfer, alleging compulsion and duress. The trial court sustained a demurrer, but on appeal its action was reversed, and the cause remanded, with the statement that the bill stated a good cause of action entitling him to relief. We quote from the opinion as follows:

"The doctrine appears to be well established that, where one party has possession or control of the property of another, and refuses to surrender it to the control and use of the owner, except upon compliance with an unlawful demand, a contract made by the owner under such circumstances to emancipate the property is to be regarded as made under compulsion and duress. Nor can it be doubted that a contract procured by threats inducing fear of the destruction of one's property may be avoided on the ground of duress; there being nothing in such a case but the form of a contract, wholly lacking the voluntary assent of the party to be bound by it. To constitute duress, it is sufficient if the will be constrained by the unlawful presentation of a choice between comparative evils, as inconvenience and loss by the detention of property, loss of property altogether, or compliance with an unconscionable demand.

"In civil cases the rule as to duress has a broader application at the present day than that it formerly had. So when concessions are exacted through the necessity of a person, in

order to save his property, illegally withheld by another, from destruction or irreparable injury, such a transaction may be avoided on the ground of compulsion, though not amounting to technical duress"—citing authorities.

The case of First National Bank v. Sargent, supra, grew out of the execution and delivery of a deed absolute in form, but intended as a mortgage. The bank afterwards assumed to be the absolute owner of the .property. Sargent, the mortgagor, was in financial distress and had no way of meeting his indebtedness save by a sale of the mortgaged property. Having negotiated an advantageous sale he applied to the bank for a reconveyance, and offered to pay the debt in full. The bank refused to reconvey unless .the mortgagor would pay several hundred dollars in addition to the full amount of the debt. He submitted to this extortionate demand, paid the money, and received a reconveyance of the property. He then sued the bank for the amount of money paid by him in excess of the debt. He was held entitled to recover on the ground that such payment was under duress, and involuntary. We quote from the opinion in the case as follows:

"The authorities are abundant to the effect that, where goods or other property is in possession of one not the owner, who refuses to deliver such property to the owner unless the latter pays him a sum not rightfully due, and the owner in order to obtain possession of his property pays the unlawful exaction, a payment so made is in a legal sense under duress and may be recovered back in a proper action; and especially is such the case where the wrongful detention is connected with circumstances of hardship or serious inconvenience to the owner. * * *
"In other cases it is said, in order to constitute duress, 'there must be some actual or threatened exercise of power possessed, or supposed to be possessed, by the party exacting or receiving the payment, over the person or property of the party, making the payment,' from which the latter has no other means of immediate relief than by advancing the money." Brumagim v. Tillinghast, 18 Cal. 265, 79 Am. Dec. 176; Radich v. Hutchins, 95 U. S. 210, 24 L. Ed. 409.

In Joannin v. Ogilvie, supra, a mechanic's lien was filed against property upon an unfounded claim, which the owner paid under protest, in order to clear the title of record, so that he might consummate a loan on the property which he had negotiated in order to raise money to pay a prior overdue mortgage and other pressing debts; he having no other available means of raising such money. The payment under the circumstances was held to be in consequence of duress of property and involuntary, and an action to recover the same was sustained. We quote from the opinion in that case as follows:

"It may be stated generally that, whenever the demandant is in position to seize or detain the property of him against whom the claim is made without a resort to judicial proceedings, in which the party may plead, offer proof; and contest the validity of the claim, payment under protest, to recover or retain the property, will be considered as made under compulsion, and the money can be recovered back, at least where a failure to get or retain immediate possession and control of the property would be attended with serious loss or great inconvenience.—Oceanic Steam Nav. Co. v. Tappan, 16 Blatchf. 297. * * *
"The distinguishing and ruling fact in this case was the active interference of plaintiffs with defendant's property by filing the claim for a lien, which effectually prevented the defendant from using it for the purposes for which he had immediate and imperative need. It was this active interference with the property, and not the necessitous financial condition of the defendant, which constituted the controlling fact. * * *
"The only remedies open to defendant were either to commence a suit himself to determine the validity of plaintiffs' claim, or wait, perhaps a year, until the latter should commence a suit to enforce it. But, with a large indebtedness hanging over him, an overdue mortgage on this very property upon which foreclosure was threatened, with no means to pay except money which he had arranged to borrow on a new mortgage which he had executed on this same property, $13,000 of which was withheld and could not be obtained until plaintiffs' claim of lien had been discharged of record, it is very evident that neither of the remedies suggested 'would do defendant's business.'"

In the case of Lappin v. Crawford, supra, the mortgagee after foreclosure of the mortgage agreed to reconvey the land on receipt of a certain sum of money by a specified date. The defendant for a commission which he received from plaintiffs agreed to procure a loan of the amount required for the mortgagors. He waited until the afternoon of the last day allowed for payment, and then without consideration compelled the mortgagors to execute and deliver to him two notes for $500 each, and to secure the same by deed of trust on real estate on penalty of refusing to complete the loan, which he knew would result in the loss of their right to redeem, or repurchase the property. The mortgagors brought suit to cancel the notes and deed of trust, and it was held that they were entitled to such relief. We quote from the opinion in that case as follows:

"But it is argued that the Lappins knew they were executing these notes and this deed of trust when they signed them and that a court of equity will not relieve them in such circumstances. This contention was answered when this cause was here on the former appeal, and it was said, in the language of this court in Bell v. Campbell, 123 Mo. loc. cit. 14, 15 [25 S. W. 359, 362, 45 Am. St. Rep. 505], as follows: 'The circumstances of this case clearly bring it within the operation of the principle

that condemns and voids a contract entered into where the obligor is not a free agent; where he stands in vinculis; where he is not equal to the task of protecting himself; where the circumstances which surround him at the time are of such extreme necessity or of distress that his will is overcome, his free agency destroyed by some oppression or fraudulent advantage or imposition incident to the transaction. In such case a court of equity will protect him, by setting aside the contract thus made.' 1 Story, Eq. Juris. (13th Ed.) § 239."

In all the other cases cited the illegal demand could be extrajudicially enforced, and the alternative, in event of refusal, was such loss or injury to the property or property rights of the party claiming to have acted under duress as compelled submission to such demand against him.

Measured by these standards, do the allegations of the petition under consideration show duress?

[10] There being an allegation of conspiracy between the three Wards to force the Scarboroughs to sell their property to E. J. Ward at a great sacrifice, the acts of all of them will be considered as though done, or at least procured to be done, by plaintiff in error, E. J. Ward.

[11] Assuming the allegations of the petition to be true as we are required to do in passing upon the demurrer, we find the Scarboroughs were in possession of valuable property. While it was incumbered, none of the debt was due. They had negotiated a sale of the same at a satisfactory price, reserving to themselves the entire mineral rights therein alleged to be worth $100,000. Gus Ward had engaged to aid them in effecting a sale and had put up for them a forfeit required by the contract of sale. He then, without notice to them, informed the purchaser that the forfeit had been taken down, and willfully, falsely, and fraudulently misrepresented the value of the land and thereby defeated the sale. One of the Scarboroughs had gone to East Texas to consummate the sale, but the purchaser declined to take the property without disclosing that the interference of Gus Ward was the reason of his refusal to consummate the trade. On the return of said Scarborough, John Ward and E. J. Ward immediately met him at the train, and John Ward immediately demanded the payment in full of the Mosely debt and declared that, if it was not paid the next day, he would advertise the property for sale and sell the same to pay the debt, under the power granted to him in the deed of trust. The agreement of waiver and extension which deprived John Ward of the right to demand immediate payment of the debt appears to have rested in parol, and, while it is not specifically alleged that he denied making the same, the effect of the allegations is to show that he repudiated the same and in breach of his fiduciary obligation as trustee in the deed of trust asserted that he had a right to advertise and sell the property, and that he would do so if his illegal demand was not complied with, and that the Scarboroughs believed him, and believed that he could and would sell the property at such threatened forced sale and thereby sacrifice their equity therein.

At the same time and place E. J. Ward offered to buy the property and thus afford them the means to pay the debt, as demanded by said John Ward, but he offered a less price than they were to receive under the contract which Gus Ward had just broken up. His offer permitted them to reserve only one-half of any royalty which might be paid under an oil lease which was wholly undeveloped and which expired in December, 1919, and which chance of royalty appeared to be of small value.

The threatened sale by John Ward, as trustee in said deeds of trust, would have conferred upon the purchasers a record title apparently good as against the Scarboroughs, and such title in the hands of an innocent purchaser could not have been successfully assailed by them. Schneider v. Sellers, 98 Tex. 380, 389, 84 S. W. 417, 421.

Although the price offered was grossly inadequate, they were induced to part with their property to meet such unlawful demand for immediate payment rather than have it sacrificed at public sale. They were financially helpless and unable to give bond to enjoin the sale, and accepted the offer of plaintiff in error, because they were compelled to do so by their situation and circumstances.

The allegations show a willful and fraudulent scheme to reduce defendants in error to a state of financial helplessness and distress and to thereby force them to part with their property against their will for a grossly inadequate price, or, in the alternative, suffer the almost certain loss of their entire equity therein.

We think this case comes within the rule announced by the cases cited, and that the sale in contemplation of law was under duress and involuntary.

The case of Sanborn v. Bush, 41 Tex. Civ. App. 24, 91 S. W. 883, on which plaintiff in error relies, is distinguishable from this case. In that case Sanborn conveyed to Bush large properties. Sanborn contended that the conveyance was intended as a mortgage, but this contention was not admitted, and the evidence was conflicting. They subsequently entered into a written agreement that Bush should reconvey the property on a complete accounting and full payment of the original indebtedness, with interest and all items of cost and expense incident to the management of the property. On final settlement,

Bush required Sanborn to pay $2,500 more than he (Sanborn) admitted to be due. Sanborn testified that he paid said sum under protest, but that Bush accepted it under protest and that the protest was mutual. Sanborn testified that he advised with Mr. Bush's lawyer, who argued that it was better to settle on that basis than to let the matter go to court and incur expense and suffer delay. Sanborn did not claim that he was induced to accede to the demand of Bush because of any fear that the property would be injured or lost to him if he litigated his rights, nor that he would have suffered any material loss or injury by being deprived of possession pending such litigation.

That case, as we view it, involved a contention apparently in good faith between the parties thereto with reference to complicated business transactions and a reluctant, but mutual, compromise of their differences to avoid litigation. This is little, if any, more than is shown in every case of accord and satisfaction. The Court of Civil Appeals held that the testimony failed to show such unlawful and wrongful detention of the property as would amount in law to duress.

Plaintiff in error presents other contentions subordinate to the principal issue, all of which have been carefully considered and are here overruled, but, because of the necessary length of this opinion, without discussion.

We will now consider whether the petition, as a whole, is sufficient as against a general demurrer to state a cause of action to impress the said property in the hands of plaintiff in error with a constructive trust. The law applicable to this case is thus stated in 3 Pom. Eq. Juris. (4th Ed.) § 1053:

"In general, whenever the legal title to property, real or personal, has been obtained through actual fraud, misrepresentations, concealments, or through undue influence, duress, taking advantage of one's weakness or necessities, or through any other similar means or under any other similar circumstances which render it unconscientious for the holder of the legal title to retain and enjoy the beneficial interest, equity impresses a constructive trust on the property thus acquired in favor of the one who is truly and equitably entitled to the same, although he may never perhaps have had any legal estate therein, and a court of equity has jurisdiction to reach the property either in the hands of the original wrongdoer, or in the hands of any subsequent holder, until a purchaser of it in good faith and without notice acquires a higher right, and takes the property relieved from the trust. The forms and varieties of these trust, which are terms ex maleficio or ex delicto, are practically without limit. The principle is applied whenever it is necessary for the obtaining of complete justice, although the law may also give the remedy of damages against the wrongdoer."

The above text was quoted, approved, and applied by the Supreme Court in the case of Schneider v. Sellers, 98 Tex. 380, 84 S. W. 417, 421.

We think the law so declared is applicable to this case. Defendants in error in their petition offered to do equity by permitting the decree to be rendered thereon to require them to refund to plaintiff in error all sums paid to them, as well as all sums paid by him in discharge of the incumbrance on the land as a condition precedent to their recovery of the same. Angle v. Chicago, St. P., M. & O. R. Co., 151 U. S. 1, 14 Sup. Ct. 240, 38 L. Ed. 55; Schneider v. Sellers, supra; 1 Perry on Trusts, § 211.

We therefore recommend that the judgment of the Court of Civil Appeals be affirmed.

CURETON, C. J. The judgment recommended in the report of the Commission of Appeals is adopted, and will be entered as the judgment of the Supreme Court.